Gaston, J.
 

 This bill was filed in Rockingham Court of Equity, at the Fall Term, 1834, and charges that one John Byson sold and conveyed a tract of land, in said county, lying on both sides of Haw River, immediately above the High Rock Mills, to one Christopher Harris, and that shortly thereafter, about the year 1808, the said Christopher sold and conveyed all that part of the said tract which lies on the south side of said river to Peter Byson, then the proprietor of said Mills, who thereafter used and held- the same as a part of his said Mill tract; that thereafter, about the lithof November, 1811, Peter Byson sold and conveyed the said Mills and all his land adjoining, including the piece so purchased of Harris, to Nathaniel Scales; that Scales conveyed one undivided moiety thereof to Joseph McCain, the hus
 
 *177
 
 band of the plaintiff Mary; that the said Nathaniel and Jo seph held the same in common until the year 1824, when' the said Nathaniel died, having devised the undivided moiety so retained by him unto the plaintiff Mary; and that the said Joseph died in 1830. whereupon his moiety descended to the other plaintiffs, his heirs at law. The bill further charges that the deed aforesaid from Harris to Peter Byson was never registered;-that the plaintiffs have made every en-quiry and exertion to procure it, but have been unable to obtain it; that they believe it was left by Peter Byson, when he was about to leave this State, in a trunk with other valuable papers in the possession of the defendant, Samuel Hill, who has suppressed or destroyed it, and who, with a knowledge that said deed exists or once existed, sets up title to the said land, claiming the same under some conveyance or pretended conveyance, either from the heirs of said Harris or from some one claiming under the said heirs. The bill slates that Peter Byson has long since died in a distant State; that Christopher Harris is also dead, and that the other defendants are the heirs at law of the said Christopher; that the plaintiffs are now able to prove the said deed from Harris to Peter Byson, but fear that hereafter they may not be able to do so; that the land thereby conveyed is wood land, of which there is no other occupation than by using the timber, which they and those under whom they claim have been accustomed to cut for the use of the mills ever since the convejumce by said Harris, and that the defendant Hill, under his claim as aforesaid, is also cutting said timber, and, because of this defect in their title, they cannot maintain an action at law for such trespasses. They pray that all the defendants may be compelled to answer the premises and to produce the said deed, if in existence and in their power, in order that the same may be duly registered; and, if the said deed cannot be produced, that they may be compelled to perfect the title of the plaintiffs, and for general relief. The defendant Hill answered the bill. He therein denies all knowledge of the alleged deed from Harris to Peter Byson, declares that he has never seen it; nor does he believe that such a deed ever was executed. He admits that the said Byson, when about'
 
 *178
 
 to quit this State, did leave in his possession a trunk containing papers, but he declares that he never opened it until about the year 1822, when he did so at the request of Joseph McCain, to look for the said supposed deed; that the said McCain then searched among the papers for the deed but . found none such; that he understands the said McCain made , many and extensive enquiries after the same, but being unable to find it abandoned the pursuit,- under the impression that none such had been made. The defendant sets forth many circumstances inducing him, as he alleges, to believe that McCain had abandoned his title under said supposed deed, and states that thereupon, in 1830, he contracted to buy this piece of land from one Josinh G. Saunders, who alleged that he had bought from the heirs of Harris, paid him down $50, part of the purchase money, and agreed to pay the remaining part thereof, $350, when Saunders should ex-ecüte or send to him a duly authenticated conveyance, and also bring or send a duly authenticated conveyance from the heirs of Harris; and fuither states that in Nov. 1832, Saunders sent him a deed of conveyance purporting to have been executed by him, which defendant exhibits with his answer, and also a deed purporting to have been executed by the other defendants, the heirs of Harris, which he states has not, yet been duly proved to be admitted to registration, but which he will cause to be proved, and when so proved, he will exhibit to the court, and that he then paid Saunders the residue of the purchase money. The defendant avers therefore that he is a purchaser for value of the land in dispute, without notice of the pretended equity of the plaintiffs. He admits all the other allegations of the bill, except that, as to the allegation that Peter Byson conveyed the land in question, he answers that he does not know that fact, and therefore does not admit it.
 

 No answer was put in by the other defendants, and it being shewn they were not inhabitants of the State, publication was made and the bill- set down' to be heard against them
 
 ex parte. •
 

 Before the hearing.off this cause, one of the plaintiffs, Mary S. McCain, intermarried with James Watt, and another,
 
 *179
 
 'Sally, intermarried with William Geren, and the defendant, Samuel Hill, died, having devised the tract of land in dispute to his two sons, Charles P. Hill and Green Hill, whereupon a bill of revivor was filed, in which the said James and William were joined as parties plaintiffs, and the said Charles and Green made parties defendants, and the cause has been revived accordingly.
 

 On the question, whether the alleged conveyance was made by. Harris, we think the proofs are satisfactory. It is proved by
 
 William Taylor,
 
 that he, being desirous of purchasing a small piece of this land, applied to Harris to buy it, but was informed by Harris that he had sold the land to Byson; that thereupon he applied to Byson, bought the piece of land from him, took a conveyance, and immediately after entered into the actual possession and cultivation of it. This happened about the year 1807.
 
 Matthew Newell
 
 testifies that he knew of a negotiation going on between Harris and Byson for this land; that the former asked adollar and a half, and the latter offered to give a dollar and a quarter per acre; that he does not know that they concluded the bargain, but he knows that the parties afterwards had the land surveyed, and he was present with them at the survey. By-son used the land by cutting timber upon it.
 
 Charles Thacker
 
 testifies that he held a bond of Harris, and applied to him for payment, when the latter informed him that he was about to sell the land to Byson, that the .witness after-wards applied to Byson, who promised to pay the .bond as soon as he should have received the deed; that having learnt from Harris that the deed was executed, he again applied to Byson and communicated this fact to him; that he admitted that he had received the deed, pointed to a paper on the table which he said was the deed, and paid the bond to the witness. There is an attempt to discredit this witness by testimony respecting his character, but none of the witnesses introduced for that purpose, though they give him a bad reputation for honesty, declare him unworthy of credit. When to this testimony is added the admitted fact that, ever since the time of the alleged conveyance in 1807, Byson, Scales, McCain and the plaintiffs have used this piece of
 
 *180
 
 land by cutting' the timber thereon, and that there is no proof that from 1807 to 1832 either Harris or his heirs set up claim thereto or in any way exercised dominion thereon, we muS(; beiieVe that the alleged conveyance was executed.
 

 No deed is exhibited by the defendant Hill from the other defendants — and, if if had been, it is manifest from his answer, that long before he contracted for the land he was well apprised of the claim set up by McCain, and that it he bought the land he purchased at his own risk. There is ho proof that Saunders or himself paid any thing for the land.
 

 The plaintiffs have exhibited the deed from Peter Byson to Scales, conveying a large body of lands, and also the deed from John Byson to Harris, which last, it is admitted, comprehends the land in question. But we are unable, by a comparison of the two deeds, to ascertain to our satisfaction whether the former deed comprehends it. As this fact is not admitted, we deem it proper that an enquiry be directed to ascertain with precision the boundaries of this piece of land; and whether the same be embraced within fhe deed made by Peter Byson to Scales. The commissioner mpst be authorized, if he deem it necessary, to cause a survey to be made, and to,examine witnesses on oath, so as to enable him to execute this enquiry. The cause is reserved for further direc? tions upon the coming in of the commissioners’ report.
 

 Per CfiRiAiq., Ordered accordingly.