The plaintiff instituted this special proceeding against defendant pursuant to the provisions of section 2580, Revisal, for the purpose of finding and recovering compensation for the right of way over his land occupied and appropriated by defendant for "railroad purposes." He filed his petition before the clerk of the Superior Court, alleging that he was the owner in fee of the land, a description of which (99) is set out; that defendant has entered upon and built its track across said land, and appropriated pursuant to the power conferred by its charter 200 feet for its track, etc. He further alleged: "That said land is peculiarly valuable by reason of valuable deposits of mineral therein, especially mica, there being on said land a valuable deposit of mica, which your petitioner is informed and believes could have been worked at a great profit, but by reason of the construction of said railroad by the said defendant, South and Western Railway Company, as aforesaid, the working of said deposit of mica has been rendered impractical and unprofitable, in that the embankments and excavations aforesaid and the roadbed and track of the said railroad have been built across the said deposit of mica in such a manner as to make it necessary, in order to prevent the obstructing of trains operating on said roadbed and track, to transport the whole of the waste and output of said mica deposit across the said embankments, excavations, roadbed and track of the said defendant, and your petitioner is informed and believes that by reason of the great cost of so transporting the waste and output of the said mica deposit the working of the same would now be impracticable and unprofitable, all of which is to the great damage of your petitioner. Wherefore, your petitioner prays the court that it appoint three disinterested freeholders who reside in the county of Mitchell, where the said land is situated, to appraise and assess the compensation and damages for the right of way of said railroad over said lands and for the use and occupancy of said lands by said defendant company for the use of its said railroad, and for damages to your petitioner caused by the construction of said railroad and by the repairs made and to be made thereon." Summons was duly issued and served upon defendant company. Defendant answered denying the allegation of ownership, *Page 82 
admitting that defendant company, subsequent to 22 July, 1902, went into possession of the right of way described in the petition. The allegation in regard to the mica mine was denied. Defendant asked for appropriate relief, etc., demanding that the issues of fact raised by the petition and answer be transferred to the civil docket for trial, (100) etc. The clerk made an order appointing three commissioners to assess the benefits and damages sustained by petitioner by reason of the construction of the track and the appropriation of the right of way. To this order defendant duly excepted and demanded a jury trial. The commissioners made their report, assessing against defendant $8,000 as compensation and damages. Defendant filed exceptions to the report. Plaintiff also excepted, for that the amount assessed was inadequate, etc., demanding a jury trial upon the issue as to compensation. The clerk overruled all of the exceptions and confirmed the report. Plaintiff and defendant again excepted and appealed to the Superior Court. At the November Term, 1905, defendant, by leave of the court, amended its answer, setting forth that plaintiff acquired his title from one Abijah Thomas, who, prior to the execution of the deed to him, had conveyed said land to one J. L. Rorrison, who was then dead; that said deed had been lost, etc.
The cause came on for trial at the July Term, 1908, of MITCHELL. Plaintiff introduced a grant to Job Thomas, dated 8 June, 1876; a certified copy of a deed from Job Thomas and wife to Abijah Thomas, dated 15 May, 1880. Defendant objected to the introduction of this deed. It was admitted under the provisions of chapter 101, Laws 1907. Defendant excepted. Plaintiff introduced a deed from Abijah Thomas to himself, dated 17 June, 1901. The consideration recited in this deed was $10, and the operative words are, "have given, granted, conveyed, confirmed and quitclaimed, and by these presents do give, grant, convey, confirm and quitclaim unto the said P. H. A., his heirs and assigns, all my right, claim, interest and property in and to," etc., describing the land. It does not contain any warranty. It was duly probated and recorded 14 September, 1901. Plaintiff and defendant introduced testimony in regard to the value of the land, the location of the road, the mica mine and the effect of the construction of the track upon the operation of the mine, etc. Plaintiff's witnesses placed a valuation upon the land before the track was laid and the right of way acquired of $20,000. There was much conflicting evidence in regard to the value of the mica (101) mine, defendant's witnesses giving the opinion that it was of very small value, while plaintiff's witnesses thought it very valuable. Defendant offered to show by several witnesses that they had seen a deed executed by Abijah Thomas to J. L. Rorrison some eighteen years ago; that the surveyor ran the land by the deed to Rorrison. It introduced *Page 83 
J. W. Gudger and proposed to show by him that "he took the acknowledgment of the deed from Abijah Thomas to J. L. Rorrison and returned the same to the custody of J. H. Greene, attorney for Captain Rorrison, and that since the last time he saw it Mr. Greene's office and all his papers and personal effects were washed away in the flood which devastated Bakersville sometime thereafter." It further proposed to show by Malone Thomas, son of Abijah, who was dead, that he was present when plaintiff came to his father to get him to convey the land; that "Abijah refused to do so, stating that he had made a previous deed to J. L. Rorrison. They also proposed to show by this witness that he had seen the deed from his father, Abijah Thomas, to J. L. Rorrison, and that it had been lost." "The court, being of the opinion that the defendant could not in this action dispute the title of the plaintiff by showing title in some other person unless it claims under him, sustained the objection to all of the testimony offered for this purpose; whereupon defendant excepted." Defendant also proposed to show by Malone Thomas that he was working the mica mine at the time the survey was made; that he worked under Rorrison; that the mica was sold to Rorrison and that he was paid a royalty on it. This testimony was excluded, and defendant excepted. Other testimony of the same character was tendered and excluded and defendant excepted.
At the conclusion of the evidence the defendant tendered to the following question of fact, and asked the court to decide it before submitting to the jury the issue in regard to the damages and compensation: "Is the plaintiff, P. H. Abernathy, the owner of the land described in the petition filed in this cause?" The court refused to consider or decide the question of fact. Defendant excepted. The defendant thereupon asked the court to submit an issue of fact to the jury in the same language. This was declined. Exception by defendant. The defendant submitted several requests for special instruction, all of which were (102) denied, and defendant excepted. A number of exceptions were noted to instructions given to the jury in regard to the mode of ascertaining the amount of compensation and damage which plaintiff was entitled to recover.
The following issues were submitted to the jury:
"Is the plaintiff the owner of the land described in the petition?"
The court instructed the jury that if they found he was the owner they would answer the first issue "Yes"; otherwise, "No."
"What damage, if any, has the plaintiff sustained by reason of the impaired value of the plaintiff's land, caused by the appropriation by the defendant as a right of way over said land and constructing and operating a railroad on said right of way?" *Page 84 
The jury answered the first issue "Yes," and assessed the damages at $7,000.
Judgment was signed as set out in the record. Defendant duly assigned error and appealed.
Defendant, pursuant to the provisions of its charter, entered and built its track upon and through the land described in the petition. It made no effort to acquire a right of way by condemnation proceedings under its charter or the general law (chapter 61, Revisal). The plaintiff, claiming to own the land, pursuant to section 2580, brought this special proceeding, alleging title in fee in himself and demanding compensation for the right of way upon which defendant had constructed its track. He concedes that defendant is entitled, in the exercise of the right of eminent domain conferred upon it, and has the right to appropriate for "railroad purposes" a strip of the land of 200 feet width, and proposes to confer by the judgment in this proceeding title to the easement upon being paid compensation. This he is entitled to do, provided the land belongs to him. While the proceeding for condemnation, when instituted by the corporation, is a (103) forced sale, so, when instituted by the owner, it is a forced purchase of the easement. But for the right of entry and appropriation before condemnation the defendant would by entering be open to an action for trespass. This present proceeding admits the right of defendant to "take," and seeks to make it "pay." The provisions of the statute regarding the mode of procedure and rules of practice are indefinite and obscure. The Legislature, recognizing the difficulty of doing more than outlining the practice so as to safeguard the rights of the parties, has conferred upon the court the power to make rules of procedure when they are not expressly provided by the statute; "so that, the practice shall in such cases conform as near as may be to the ordinary practice in the courts." Revisal, section 2593. We have, in cases wherein the corporation filed the petition, prescribed the procedure in conformity, as nearly as practicable, with other special proceedings. R. R. v. Lumber Co.,132 N.C. 644; Durham v. Riggsbee, 141 N.C. 128; R. R. v. R. R.,148 N.C. 61. While in other special proceedings, when an issue of fact is raised upon the pleadings it is transferred to the civil docket for trial, in condemnation proceedings the questions of law and fact are passed upon by the clerk, to whose rulings exceptions are noted, and no appeal lies until the final report of the commissioners comes in, when upon exceptions filed, the entire record is sent *Page 85 
to the Superior Court, where all of the exceptions are passed upon and questions may be then presented for the first time. R. R. v. Stroud,132 N.C. 413; R. R. v. Newton, 133 N.C. 132; Porter v. Armstrong,134 N.C. 447; Durham v. Riggsbee, 141 N.C. 128. The reason for this practice is discussed in these cases. Pursuant to these decisions, the clerk should have found whether the plaintiff was the owner of the land before ordering the appraisement. If he had found that he was not such owner he would have dismissed the proceeding, and plaintiff could have appealed. If he had found him to be the owner the defendant could have excepted, the clerk would have appointed the commissioners, and upon the coming in of the report and exception the entire record would have been open to review. Assuming that the clerk found that plaintiff was the owner, the case was properly in the Superior (104) Court for all purposes. We have held that in proceedings instituted by the corporation the only issue of fact to be submitted to the jury was the amount of compensation. R. R. v. R. R., supra. It is not clear whether his Honor should have decided the question of title or have formulated an issue and, under proper instructions, have submitted it to the jury. It is not very material as to the manner in which it was done. If controverted questions of fact were presented in regard to the title the judge can always call into his and a jury.
It is manifest, however, that before the plaintiff can proceed to claim or recover compensation he must establish not a mere prima facie but a good title, as he would be compelled to do in a bill for specific performance. If he does not own the land upon which the defendant has constructed its road and imposed a burden, he has nothing to be "taken," and therefore nothing for which he is entitled to compensation. His Honor, recognizing this truth, submitted an issue to the jury in regard to plaintiff's title. The defendant complains that he did not permit them to show that, notwithstanding his paper title, plaintiff did not in fact have title, because his grantor had before conveying to him granted to one Rorrison. The record states that his Honor excluded the evidence tendered by defendant upon this question, because he was of the opinion that it could not in this proceeding dispute plaintiff's title by showing that the true title was in a third person. The question is of first impression with us. The statute provides that if there are adverse and conflicting claimants to the money the court may direct it to be paid into court, and the rights of such claimants will be adjusted by reference or otherwise. This end is accomplished by bringing all persons claiming an interest in the land before the court. The company acquires the right of way and the court distributes the compensation. Unless some such provision is made, a corporation having the right of eminent domain would be indefinitely postponed in acquiring title and going on *Page 86 
with its work, or be subjected to a succession of suits for compensation.
The court will never require a purchaser to take and pay for a (105) doubtful title when he is entitled to call for "a good and indefeasible" one. Certainly, if in this case, after plaintiff had shown his quitclaim deed, defendant had introduced a deed of prior date from his grantor to Rorrison, the court would not have excluded it because defendant did not connect himself with such title. The rule may be assimilated to that which prevails in an action for the recovery of land in which defendant may always meet the plaintiff's prima facie title by showing an outstanding title in a stranger, for the obvious reason that no one except the true owner has the right to oust the person in possession; hence the familiar maxims that the plaintiff in an action of ejectment must recover upon the strength of his own title, and not upon the weakness of defendant's. If this were an action for the possession of the land, plaintiff, upon showing title out of the State by the grant and a chain of title to himself, would recover, unless the defendant could show a prior grant to some one other than plaintiff's grantor or a prior deed to a third person, etc. We do not see any good reason why, upon the same principle, it is not open to defendant to show that the plaintiff's grantor had no title when he undertook to convey to him. The reason is much stronger here, because the plaintiff is seeking to compel defendant to buy an easement in the land and pay full value for it. The evidence, if believed, tended to show that several years before Thomas conveyed to plaintiff he conveyed the same land to one Rorrison, who went into possession, had it surveyed by the calls in the deed, worked the mica mines on it, etc. Defendant offered to show by the witness Gudger that he took the probate of the deed and gave it to Mr. Greene, Rorrison's attorney; that his office was washed away in a freshet which visited the town of Bakersville. Defendant also offered to show by Malone Thomas, son of Abijah, that when plaintiff approached his father to buy the land he told plaintiff that he had conveyed it to Rorrison; that witness saw the deed to Rorrison and that it had been lost; "that it was washed away," and "the surveyor had it running the land — that is how I came to see the deed"; that Rorrison was in possession of the land at that time. Several other witnesses were introduced to show that Rorrison was in possession, working the mine. Rorrison and Abijah Thomas are both dead. This testimony is (106) competent and should have been received upon the question of plaintiff's ownership. If true, it is manifest that at the time Thomas conveyed to plaintiff he was not the owner of the land. The learned counsel for plaintiff insists that the evidence was not of sufficient probative force to set up the deed and show that it was lost. We think that, if believed, it was amply sufficient to be submitted to the court and jury *Page 87 
upon the question whether Thomas had executed such a deed. There is Thomas' declaration to the plaintiff when he approached him to buy — a declaration against the interest of the declarant; the testimony of Gudger that he took the probate of "the deed"; of two sons of Thomas that they had seen "the deed"; of one that he was present when his father told plaintiff that he had conveyed to Rorrison, and that he saw the deed when the land was being surveyed for Rorrison; of several witnesses that Rorrison was in possession of the land — that they worked the mine for him; and the purchase by plaintiff of the "right, title and interest" of Thomas for $10 of a tract of land which plaintiff's witnesses swear was worth $20,000. Upon a bill by the heirs of Rorrison to set up the deed, this evidence, if believed, would be regarded as plenary. In regard to the loss of the deed, the evidence is necessarily much less cogent. If the execution and delivery of the deed, followed by possession of the grantee, is shown, a prima facie case showing that it was lost would entitle the party to relief. However this may be, his Honor's ruling precluded defendant from pursuing the line of proof. It may be that, if permitted to follow it up, more satisfactory evidence of the loss could have been adduced. Under our former system of practice, a person claiming under a deed alleged to have been lost before registration sought relief by a bill in equity, wherein the judge heard the proofs and granted or refused relief in accordance with his opinion as to the convincing character of the evidence. He required the proof to be satisfactory, especially when the fact of execution was denied. InPlummer v. Baskerville, 36 N.C. 252, the Chief Justice lays down the general rules by which courts of equity were guided in such cases, and discusses the evidence at much length. In concluding the opinion denying relief, he says: "It would be too much to declare the (107) existence of such an instrument, when its execution is in no manner proved, either by witnesses to it or by a person saying he had seen it, or even by a single declaration of the supposed bargainor, and when there has been and could be no corresponding possession, besides many other circumstances to render it at least probable that no such instrument was in fact ever executed." The testimony in this appeal tends to establish every fact, the absence of which is made the basis of the refusal to grant relief in that case. In McCain v. Hill, 37 N.C. 176, relief was granted. Plaintiff is not "a purchaser for value," as that term used in the registration laws has been defined by us. Fullenweider v.Roberts, 20 N.C. 278; Harris v. DeGraffinried, 33 N.C. 89; Potts v.Blackwell, 57 N.C. 58; Worthy v. Caddell, 76 N.C. 82. It is not suggested that $10 was, at the date of the deed to plaintiff, more than a nominal consideration. The language of the deed excludes the suggestion that plaintiff supposed that he was buying more than a claim to the land; he *Page 88 
bought with full notice that his grantor disclaimed having title. A quitclaim deed by its terms puts the person taking it upon notice that he is getting a doubtful title. Lumber Co. v. Price, 144 N.C. 50.
It is not necessary to the decision of this case that the heirs of Rorrison be brought in. If the title is in them the plaintiff can confer no title to the easement or right of way, and must fail in his suit. To bring them in would be to engraft a controversy in which the plaintiff has no possible concern. Our conclusion upon this question entitles the defendant to a new trial. As the case goes back for that purpose, it may be well to notice several other exceptions to prevent further delay in disposing of the controversy.
Defendant moved the court to dismiss the proceeding because it insists that two causes of action are joined in the petition — one for compensation and the other for damages. We concur with the learned counsel for defendant that, in a proceeding for condemnation, being entirely statutory, a cause of action for damages, as for a trespass, can not be joined. The authorities cited in his brief and commented upon in the oral argument sustain him in this view. Allen v. R. R., 102 (108) N.C. 381; Land v. R. R., 107 N.C. 72. It is also true that no new cause of action can be engrafted upon the petition in the Superior Court. The proceeding must be conducted upon the petition as filed, and no amendment changing its character or involving controversies between the parties, not germane to it, can be made in the Superior Court. New parties may be brought in if necessary to a final determination of the matters involved in the proceeding as instituted, as, for instance, the distribution of the compensation and perfecting the title to the right of way. While this is true, we do not follow counsel to the conclusion that the petition should be dismissed because irrelevant matter has been included. Such matter may and should be stricken out, so that the court may proceed to administer the rights of the parties without complication with such irrelevant matter. The right of the owner of land subjected to an easement by a corporation in the exercise of the right of eminent domain is to have compensation for his property or right to its full use, enjoyment and control. "Compensation and damages are sometimes used interchangeably to represent the purchase money paid for rights acquired by the eminent domain; but it is better to let `compensation' stand for purchase money and `damages' for indemnity for a trespass. Whatever confusion there may be in the use of terms, the difference between `compensation' and `damages' is frequently expressed in the rule that they shall not be ascertained in a single proceeding or suit." Randolph on Em. Dom., sec. 222. We can see that a failure to keep the distinction in view may lead to confusion, resulting in injustice. The compensation must be full and complete and *Page 89 
include everything which affects the value of the property taken and in its relation to the entire property affected. In Brown v. Power Co.,140 N.C. 333, we had occasion to consider the question and refer to what we there said and the authorities which we there cited. We concur with his Honor in refusing to dismiss the petition.
Upon another trial the question of compensation will be confined to the rule therein laid down. The real question in such case is, what was a fair market value of the property before the road was constructed, and how much is such value impaired by its construction? (109) The difference represents the amount which should be paid to compensate the owner for what has been taken. Without undertaking to pass upon a number of exceptions lodged to his Honor's ruling in admitting testimony, we may say that, in our opinion, a rather wide range was allowed, probably by reason of the form of the petition and the issue. It is not material to inquire whether the entire tract, including the mica, is "taken" in the construction of the road. Any evidence which aids the jury in fixing a fair market value of the land, and its diminution by the burden put upon it, is relevant and should be heard; any evidence which does not measure up to this standard is calculated to confuse the minds of the jury, and should be excluded. This is as far as we can safely go in the present state of the case.
The court properly admitted the deed from Job Thomas to Abijah. The act of 1907 (chapter 83) cured any defect in the certificate. These curative acts have been uniformly sustained by the courts.
For the reasons pointed out, there must be a
New trial.
Cited: Lambeth v. Power Co., 152 N.C. 373; R. R. v. Oates, 164 N.C. 174;R. R. v. Armfield, 167 N.C. 465; Lloyd v. Venable, 168 N.C. 533; R. R. v.Mfg. Co., 169 N.C. 164.