DUKE POWER COMPANY, PETITIONER v. CHARLES M. LADD AND WIFE, INEVA H. LADD, RESPONDENTS

No. 7414SC784

(Filed 4 December 1974)

1. **Eminent Domain § 6— condemnation of easement — offer to purchase made after taking — testimony stricken by court**

    In a power company's action to condemn an easement, petitioner was not prejudiced by testimony by the landowner and by the landowner's witness on cross-examination relating to a purchase offer made by the witness after the taking where the court sustained an objection to the landowner's testimony and struck it from the record and where the court allowed petitioner's motion to strike the witness's testimony and instructed the jury to disregard it.

2. **Evidence § 48— ruling that witness was real estate expert**

    In a power company's action to condemn an easement, the trial court did not err in ruling that respondents' witness was an expert in the development of real estate.

3. **Eminent Domain § 6— testimony that property with power line easement is hard to sell**

    In a power company's action to condemn an easement, the trial court did not err in allowing respondents' expert witness to testify that property with a power line easement is "definitely hard to sell."

4. **Eminent Domain § 7— witnesses who served as commissioners — no evidence before jury**

    In a power company's action to condemn an easement, there was no evidence that would have communicated to the jury that respondents' witnesses had served as commissioners of the court to assess damages.

---

Power Co. v. Ladd

---

APPEAL by petitioner from *Brewer, Judge,* 25 March 1974 Session of Superior Court held in DURHAM County.

This proceeding was instituted by petitioner to condemn an easement across a 113-acre tract of land belonging to respondents in Lebanon Township, Durham County. All issues raised by the pleadings were determined by consent order except the issue of just compensation to respondents.

The right-of-way which petitioner condemns is 150 feet wide, contains 9.28 acres, and extends approximately through the middle of the 113-acre tract for a distance of some 3,000 feet. Petitioner proposes to erect transmission lines on, and otherwise use, the right-of-way in connection with its business of generating, transmitting and distributing electric power. The date of taking was 25 September 1972. The evidence tended to show that at the time of the taking, and for many years prior thereto, the land was used primarily for agricultural purposes, particularly poultry raising.

Respondents' testimony as to value was provided by the male respondent (Mr. Ladd) and by witnesses Earl Fields, Albert Hight and H. O. Chesson. Their testimony tended to show that land in the general area of the subject property was being developed for residential purposes; that the highest and best use of the property would be residential development for family type homes; that the fair market value of the 113-acre tract prior to the taking was $226,000 or $2,000 per acre; and that the fair market value after the taking was $150,000 to $156,000, a difference of from $70,000 to $76,000.

Petitioner presented five witnesses who generally agreed that the property was worth approximately $2,000 per acre prior to the taking. However, their opinions as to damages to the property varied from a low of $18,500 to a high of $26,295.

The jury answered the issue of just compensation in the sum of $70,000, and from judgment predicated on the verdict, petitioner appealed.

*Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, by James L. Newsom and James T. Hedrick, for petitioner appellant.*

*Hofler, Mount, White & Long, by W. O. King and R. Hayes Hofler III, for respondent appellees.*

Power Co. v. Ladd

BRITT, Judge.

By assignments of error 1 and 6, petitioner contends the court erred in permitting Mr. Ladd and his witness Chesson "to testify as to a purchase offer made by Chesson to Ladd after the taking."

[1] We consider first the testimony challenged by assignment #1. On redirect examination, over petitioner's objections, Mr. Ladd testified that he had conversed with others, including his neighbors, about the development of his property, and that in about June of 1972 he talked with Chesson, a developer. The record then reveals:

Q. Mr. Ladd, were there any other factors that you considered when you gave your figures of $226,000.00 before and $150,000.00 after? Were there any other factors other that what you have already mentioned that caused you to use those figures?

A. Yes, sir.

Q. (Mr. King) What factors?

A. Well frankly it was what I was offered for it before the right of way and what I was offered for it—

MR. NEWSOM: Objection.

THE COURT: Sustained.

. . . .

THE COURT: Sustained. Motion to strike allowed.

Subsequently, on voir dire in the absence of the jury, Mr. Ladd testfied that a factor which he considered in forming his opinion as to value was what Mr. Chesson had offered him for the property before the taking ($226,000.00) and after the taking ($150,000.00).

Since the court sustained petitioner's objection to Mr. Ladd's testimony as to receiving an unspecified offer for his property, and his only testimony as to the amounts of the offers was given in the absence of the jury, we perceive no prejudice to petitioner.

---

---

The testimony of witness Chesson challenged by assignment #6 was given on cross-examination. The record reveals (page 80):

Q. Now how did you compute, Mr. Chesson, and will you tell us how you arrived at the difference between the $151,000.00 which you testified was your opinion as to the fair market value of the entire tract after the taking, and the $18,400.00 which you allocated to the 9.2 acres in the right of way.

A. Very simply the way I arrived at it, I offered Mr. Ladd $225,000.00.

MR. NEWSOM: Motion to strike.

THE COURT: Motion to strike allowed.

MR. NEWSOM: We move to strike the witness's testimony as to his opinion of the fair market value afterwards. He has made it clear he is relating it all to some offer.

THE COURT: Motion denied. Members of the jury, you will disregard anything stated by this witness as to what he offered Mr. Ladd in connection with the purchase of this property after the taking.

The testimony given by Chesson as to what he offered for the property was prompted by a question asked by petitioner's counsel. In allowing petitioner's motion to strike, and instructing the jury to disregard the testimony, the court did all it could to remove the testimony from jury consideration. As to the motion to strike all of Chesson's testimony, the record discloses that his opinion as to values was based on considerations other than offers to purchase. Assignments of error 1 and 6 are overruled.

[2]  In his assignment of error #4, petitioner contends that the court erred in ruling that respondents' witness Chesson was an expert in the development of real estate. We disagree. "Whether the witness has the requisite skill to qualify him as an expert is chiefly a question of fact, the determination of which is ordinarily within the exclusive province of the trial judge. . . . It is enough that, through study or experience, or both, he has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject." 1 Stansbury's North Carolina Evidence § 133, at 428-29 (1973).

"A finding by the trial judge that the witness possesses the requisite skill will not be reversed on appeal unless there is no evidence to support it or the judge abuses his discretion." Stansbury, *supra* at 430. We hold that the evidence supports the finding and the judge did not abuse his discretion. The assignment of error is overruled.

[3]  By assignment of error #5, petitioner contends that the trial judge erred in allowing the witness Chesson to testify that property with a power line easement was "definitely hard to sell." In *Highway Commission v. Phillips*, 267 N.C. 369, 374, 148 S.E. 2d 282 (1966), the court said: "In condemnation proceedings our decisions are to the effect that damages are to be awarded to compensate for loss sustained by the landowner. . . . 'The compensation must be full and complete and include everything which affects the value of the property and in relation to the entire property affected.' *Abernathy v. R. R.*, 150 N.C. 97, 63 S.E. 180." Since Chesson had been tendered and accepted as an expert in real estate development, on the facts appearing in this case, we hold that the testimony "affects the value of the property" and was not improper. The assignment of error is overruled.

[4]  By assignments of error 2 and 3, petitioner contends the court erred in admitting evidence tending to "establish to the jury" that respondents' witnesses Fields and Hight had served as commissioners of the court to assess damages. We have carefully reviewed the record with respect to this contention but fail to find any evidence that would have communicated that information to the jury. The assignments of error are overruled.

We have considered the other contentions argued in petitioner's brief but find them also to be without merit.

No error.

Judges MORRIS and HEDRICK concur.