A. HARDY COLVARD v. NANTAHALA POWER AND LIGHT COMPANY.

(Filed 25 January, 1933.)

1. **Appeal and Error J e—Refusal to strike out certain testimony in this case held not prejudicial.**

A witness testified as to the amount of damage resulting to the plaintiff's farm from the running of defendant's highly charged transmission line across the land. On cross-examination he testified that his estimate of the damages was based on the fact of danger from the transmission line and that people would not wish to work near it, and on further cross-examination he testified that his testimony as to damages was based on his personal dislike to be near such transmission line. The defendant made a motion to strike out his testimony relative to damages: *Held,* the refusal of the motion to strike out was not prejudicial error, the witness' unobjected testimony as to general fear of power lines being no more prejudicial than the testimony objected to, and there being testimony of several other witnesses to the effect that the value of the land was decreased by general fear of power lines.

2. **Same—Admission of certain evidence in this case held not prejudicial in view of testimony elicited by appellant on cross-examination.**

Where on the question of the measure of damages to plaintiff's farm caused by the running of defendant's transmission line across the land the defendant has elicited evidence from a witness on cross-examination, over plaintiff's objection, that the transmission line also ran near the witness's house and that the line curved, causing the witness to fear that the insulators might break and result in injury to his house, and that the same curve was on plaintiff's land: *Held,* the defendant opened the door for the evidence of the witness in this respect, and its admission was not prejudicial to him.

3. **Eminent Domain C c—Evidence of decrease in value of land caused by general fear of transmission lines held competent.**

On the question of the measure of damages to plaintiff's farm caused by the running of defendant's transmission line across it, evidence of the danger from the line and the fear of injury to people therefrom as affecting the decrease in value of the land is properly submitted to the jury, and it is not objectionable as being contingent, remote, or a matter of speculation, and an instruction based thereon is not erroneous.

APPEAL by defendant from *Stack, J.,* and a jury at June Term, 1932, of GRAHAM. No error.

This was an action brought by plaintiff to recover of defendant certain land belonging to him and damages. The defendant after denying the material allegations of the complaint for a further defense alleges that the defendant is advised and believes that it had the right as a public-service corporation under the laws of the State of North Carolina to construct its transmission lines across and upon the lands of the plaintiff, and that it also had the right by and with the consent of the Graham County Railroad Company to construct and operate said transmission line upon the railroad's right of way. *And that its only obligation to the plaintiff as compensation for said right of way is the reasonable value of the increased burden on the easement of the railroad company caused by the construction of said transmission line.* That the defendant is further advised that upon the assessment and payment of such permanent damages as the plaintiff may have sustained by reason of the construction, maintenance and operation of said transmission line, that the defendant is entitled to the unrestricted use of a right of way on and across the plaintiff's land for the maintenance and operation of its transmission line. Wherefore, having fully answered, defendant prays judgment that such actual damages as defendant may have sustained by reason of the construction and operation of defendant's transmission line be ascertained and determined, and that the defendant, on payment of any amount assessed as damages, be granted a permanent right of way over and through the plaintiff's lands described in the

complaint; and for such other and further relief as the court may deem meet and proper.

The following issues were submitted to the jury and their answer thereto:

1. Did the defendant, without agreement, enter upon the lands of the plaintiffs, dig holes and place poles and string wires thereupon and construct and use a transmission line thereon, as alleged in complaint? Answer: Yes. (By consent.)

2. If so, was the transmission line constructed on the right of way of the Graham County Railroad Company, as alleged in the answer? Answer: Yes (by consent), except one wire for 22 feet 5.6 inches over the right of way.

3. Have plaintiff's said lands been diminished in value as a result of the location, maintenance and use of the defendant's transmission line on and across said lands? Answer: Yes.

4. If so, what permanent damage or compensation is the plaintiff entitled to recover of defendant by reason thereof? Answer: $1,125.

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*T. M. Jenkins for plaintiff.*
*R. L. Phillips and S. W. Black for defendant.*

CLARKSON, J. The transmission line of defendant was constructed a distance of 2,792 feet angling across plaintiff's 84¾-acre tract and 197 feet across his 2.09-acre tract. There are 12 poles and one brace pole on the land. The power cables sag down and are about 15 to 21 feet from the ground and carries 66,000 voltage. The plaintiff testified in part unobjected to:

"The transmission is constructed on poles set about 300 feet apart on which are placed two cross or angle bars or frames on which three power cables are strung. The wires are about 8 feet wide, about four feet from the poles. . . . There are eight guy cables, six of which attach to power pole with one end and angle off and intersect with metal base to go into the ground about forty feet from the power pole. Then there is another guy pole that sets on the opposite side of the railroad with a guy wire running off from it. There is one "H" frame constructed of two upright poles with cross-arm and cables from one pole to the other. . . . I am familiar with it and know the natural adaptability or uses of that land at the time the transmission was built on it and have an opinion as to what was its fair market value of the first tract described in the complaint immediately before the trans-

mission line was built across it. It was eight thousand dollars. The uses or capabilities of this property was affected by the construction of the transmission line. Immediately after and considering the transmission line on it, the fair market value was about five thousand dollars. That land was by its location and natural adaptabilities suitable for farming, water-power, for building or residential purposes. The transmission line runs near to the most desirable part for dwelling purposes. The lower tract, the second, described in the complaint contains 2.09 acres. The distance of the transmission line across it is 197 feet. No poles are set on it. The market value of it at the time built and without the transmission line was $250. Immediately after and with the line on it, it was $150." *Crisp v. Light Co.,* 201 N. C., 46.

Many witnesses corroborated the plaintiff. The defendant's witnesses estimated the damage from $245 to $300.

A witness for plaintiff, Claude Cape, testified in part: "In my opinion the reasonable market value of both tracts just before the transmission line was built was between seven and eight thousand dollars, and just after the erection of the transmission line across them the market value was three thousand dollars."

On cross-examination by defendant, the witness stated: "Some poles are 15 to 20 feet from railroad. I attribute and base my estimation of the decrease in value of that land of $3,000 to the erection of the transmission line through it. A man don't feel like working around it and don't feel like living around it." Defendant's counsel asked the witness the following question: "You are basing your testimony on your personal liking or dislike of it?" Answer: "That is exactly right." Defendant's counsel then requested: "We ask the court to instruct the jury not to consider his valuation." The court stated: "It is for the jury to say what weight they will give his valuation." The defendant excepted and assigned error. We do not think defendant's contention can be sustained. The witness was on cross-examination and he was being questioned as to the decrease in value of the land. Unobjected to he stated "a man don't feel like working around it and don't feel like living around it." The answer "That is exactly right" is no more prejudicial than the query unobjected to.

Then again W. P. Matheson, a witness for plaintiff, on cross-examination stated: "The value of the land dropped $3,000. I attribute the decreased value of this land on profits *and on danger.* From my understanding of this character of power, *it is dangerous and no one likes to be near it* and I would attribute two-thirds to that fact."

Also Ralph Ramsey, a witness for plaintiff, on cross-examination stated: "The location of the railroad without the transmission line

would not reduce the value so much. It would not hurt it as bad as the transmission line that is there now. *People would not have been afraid to have gone there* and bought the land, just the operation of trains. I attribute practically all my decrease in value *on the fear people would have of going there*. In making my opinion of this valuation, I took into consideration that the land already had a burden of railroad right of way on it, 100 feet wide, with a constructed railroad on it."

All these reasons as to value are practically the same. It is well settled that the testimony is harmless where similar testimony is admitted without objection. *Shelton v. R. R.,* 193 N. C., at p. 674, *Thompson v. Buchanan,* 198 N. C., at p. 281, *Gray v. High Point,* 203 N. C., at p. 764.

On cross-examination of R. V. Howell, counsel for defendant *over plaintiff's objection* asked the witness the following question: "How close is that line to your house?" Answer (over plaintiff's objection): "About 66 feet, this same line." Plaintiff's counsel asked the witness the following question: "What is the effect of that line to your property running in 66 feet of your house, if any?" Answer: "I don't take the interest in it I did, owing to that." Q. "Why?" Answer: "I feel uneasy about it. It is in a curve there and if the insulators should break, it would sag in close to my house and I can't say it is mine. The same curve is at the place on plaintiff's land." The defendant excepted and assigned error and moved to strike out the witness's answer. We think defendant opened the door over plaintiff's objection and the answers on redirect examination cannot be held for prejudicial or reversible error. The witness stated a matter of common knowledge to all.

The defendant excepted assigning error to the following portions of the charge of the court below: "The court instructs you that it is your duty to take into consideration that all elements of damage to the land by reason of the addition and permanent burden of the transmission line, such as additional inconveniences to the plaintiffs in the use of their lands and any and all inconveniences growing directly or being directly caused by the erection and use of said transmission line. And in this connection the court charges you that if you should find from the greater weight of the evidence that the heavily charged wires of the defendant would prevent persons from buying the tract of land at a reasonable market value, you should take this fact into consideration in connection with all other facts tending to reducing in value the tract of land in question."

"The plaintiff contends that the land is very valuable for several purposes and particularly for agricultural purposes and that it has been greatly damaged by the erection of these poles and the overhanging wires.

He contends it carries a voltage of 66,000 and that its presence is dangerous and that it is calculated to deter people from wanting the land and therefore damages him seriously. He contends on account of that people fear the lines and would not want to live near them or cultivate the lands under them. He, therefore, says you should award him substantial damages for the erection of the lines over his land."

We think the exceptions and assignments of error cannot be sustained.

In *R. R. v. Armfield,* 167 N. C., at p. 467, speaking to the subject, we find, citing numerous authorities, the following: "In these and all other cases where this question of condemning a right of way is substantially presented, the principle, as stated, is only intended to exclude considerations of sentiment or personal annoyance detached from any effect on the pecuniary value of the property or the allowance of damages purely of a speculative character, and accordingly it is held here and in well considered cases elsewhere that in awarding damages for a railroad right of way plaintiff shall be·allowed to recover the market value of the property actually included, and for the impairment of value done to the remainder, and that in ascertaining the amount it is proper, among other things, to consider the inconvenience and annoyances likely to arise in the orderly exercise of the easement which interfere with the use and proper enjoyment of the property by the owner and which sensibly impair its value, and in this may be included the injury and annoyance from the jarring, noise, smoke, cinders, etc., from the operating of trains and also damage from fires to the extent that it exists from close proximity of the property and not attributable to defendant's negligence." *R. R. v. Manufacturing Co.,* 169 N. C., at p. 161-2.

In *Crisp v. Light Co.,* 201 N. C., at p. 50, citing the above principle set forth in *R. R. v. Mfg. Co., supra,* it is said: "The evidence covered a wide range, but we do not think it was so remote, conjectural or speculative that we could hold it, if error, reversible or prejudicial. We think the evidence that the power line over the property carried 66,000 volts, a circumstance to be considered by the jury. *R. R. v. Mfg. Co.,* 169 N. C., 156."

On defendant's motion and without objection on the part of plaintiff the court below under proper instructions and in charge of the sheriff permitted the jury "to visit and view the premises in controversy."

From a careful examination of the record and able briefs of counsel we can find no prejudicial or reversible error.

No error.