CAROLINA POWER & LIGHT COMPANY, PETITIONER v. JACK BEN CREAS-MAN AND WIFE, NORMA K. CREASMAN, AND BUNCOMBE COUNTY, NORTH CAROLINA, DEFENDANTS.

(Filed 10 July 1964.)

1. **Eminent Domain § 7a—**

The petition in condemnation proceedings should describe the land sought to be condemned by reference to uncontroverted monuments, and condemnor absent an amendment, may ordinarily acquire only the property described, G.S. 40-12, and it is not according to the usual course and practice for controversy as to the location of the land to be settled in the condemnation proceedings.

2. **Appeal and Error § 41—**

An instruction, given at the end of a protracted trial, that the jury should not consider certain incompetent evidence theretofore admitted over a period of days may not cure the error when it is apparent that the instruction could not have erased the prejudicial effect from the minds of the jurors.

3. **Eminent Domain § 6—**

Evidence of speculative and conjectural inconveniences from insects, fog, ashes, smoke, etc., anticipated from the maintenance of condemnor's dam and power plant, is incompetent.

4. **Eminent Domain § 5—**

Where respondent, in the use of his land, has treated it as an entity, it must be so considered when condemnor takes a part thereof, and the

respondent is entitled to compensation for the fair market value of the land taken and for the permanent injuries to the remaining property by reason of the severance and also by reason of the use to which the land taken may or probably will be put, but he is not entitled to compensation for damages sustained to his remaining land by reason of the use to which condemnor puts its other lands located in the vicinity, since these damages do not result from the taking but are common to all property in the neighborhood.

**5. Eminent Domain § 6—**

In the condemnation by a power company of a small part of respondent's land solely for the purpose of access to water impounded by dams in connection with its power plant, evidence of depreciation in value of defendant's remaining land incident to the maintenance and operation of the power plant and railroad for the transportation of coal thereto, the change in the nature of the locality from residential to industrial, and the maintenance of the dam and the lake, is incompetent, since such damages are common to the entire locality and do not result to respondent's remaining land from the taking of the small portion thereof.

**6. Trial § 33—**

An erroneous instruction in regard to the law must be held for error notwithstanding it is contained in the statement of a contention.

**7. Eminent Domain § 12—**

The court is authorized to tax counsel fees as a part of the cost in eminent domain proceedings only in regard to counsel appointed by the court to protect the rights of parties unknown. G.S. 40-19, G.S. 40-24.

APPEALS by petitioner and by respondents Creasman from *McLean, J.,* September 1963 Session of BUNCOMBE.

This is a condemnation proceeding in which petitioner, in connection with its construction, maintenance and operation of a new steam plant for the generation of electricity on Powell Creek in Limestone Township, Buncombe County, North Carolina, sought to acquire the fee simple title to a portion of the land in said township owned by Jack Ben Creasman and wife, Norma K. Creasman, subject to unpaid taxes due and owing to Buncombe County. Hereafter, the Creasmans will be referred to as respondents.

The parcel of land petitioner sought to condemn is described in the petition as follows:

"Beginning at a stake in the western margin of Heywood Road, the southeastern corner of J. J. Creasman and the northernmost corner of the Second Tract described in the deed recorded in Book 813, page 63, Buncombe County Registry, and runs thence, with and along the southeastern line of J. J. Creasman and the northwestern line of said Second Tract S. 51° 58′ 27″ West 20.90 feet

to a stake; thence South 9 deg. 42′ 28″ East 57.44 feet to a stake in the western margin of Heywood Road; thence, with and along the western margin of said road, North 5 deg. 34′ 1″ East 69.82 feet to the point of beginning, containing .012 acre, as shown on a map of Colburn & Gove, Engineers, entitled 'J. B. Creasman property, Limestone Twp., Buncombe Co., N.C.,' copy of which is attached to and made a part of this petition for condemnation."

The map attached to the petition and introduced in evidence as petitioner's Exhibit A is reproduced on the next page.

Respondents, in their amended answer, admitted ownership of the lands described in the petition, "with all the appurtenances thereunto belonging."

As a further answer and "CROSS-CLAIM," respondents alleged in substance: (1) Respondents own in fee simple the lands described as two (adjoining) tracts in the deed recorded in Book 813, page 63, Buncombe Registry, "which lands abut the west side of Heywood Road for a distance of 181.4 feet," and which, except as stated in the opinion, are the lands within the outer boundaries shown on Exhibit A. (2) They have "a special right of easement and user" in Heywood Road as a means of access from their lands northeast to U. S. Highway # 25, Skyland and Asheville. (3) Their "homeplace dwelling" and other improvements are situated on the "remainder of the lands," which "consists of approximately one-half of an acre." (4) Respondents' lands, improvements and easement, prior to condemnation of a portion thereof by petitioner and the closing of Heywood Road to travel northeast from their lands, had a fair market value of $15,000.00; but after said condemnation and closing of Heywood Road their lands have a fair market value of $6,000.00.

Commissioners appointed by the clerk in accordance with the procedure prescribed in G.S. Chapter 40 assessed respondents' damages at $1,150.00. Both petitioner and respondents filed exceptions to the Commissioners' report. The clerk overruled all exceptions, confirmed the report and ordered and adjudged "that the petitioner be, and it is hereby placed and put into possession of the lands and premises described in the petition." Both petitioner and respondents excepted to the clerk's order, appealed and demanded a jury trial.

In the superior court, after "(t)he Jury was duly chosen, sworn and impaneled and the pleadings read," — it was "STIPULATED AND AGREED by and between the petitioner and the respondents that the petitioner has a right to condemn the lands described in the petition as shown on the map, in that shaded portion shown on the map marked Petitioner's Exhibit 'A,' triangular in shape and containing 0.012

LIGHT COMPANY *v.* CREASMAN.

acres." Thereafter, much evidence was offered by both petitioner and respondents.

The issues submitted and the jury's answers appear in the record as follows:

"1.  Do you find the margin of Heywood Road to be the line P-W-O, as contended by the Respondents? ANSWER: *Yes* or

"Do you find the margin of Heywood Road to be the line A-B-D, as contended by the Petitioner? ANSWER: —

"As shown on the map offered in evidence by the Petitioner, and marked Exhibit B.

"2.  What amount are the defendants entitled to recover as compensation for the land acquired by the petitioner in this proceeding, including damages to the remaining lands of the defendants? ANSWER: *$5,400.*

"3.  What amount, if any, of the compensation set forth in the second issue is attributable to the closing of Heywood Road? ANSWER: *None.*"

After recitals, the judgment provides:

"IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED:

"1.  That the petitioner, Carolina Power & Light Company, its successors, lessees and assigns, be, and they are hereby vested with the fee simple title to the following particularly described lands and premises, to wit: Lying and being in Limestone Township, Buncombe County, North Carolina:

BEGINNING at a stake in the Western margin of Heywood Road (the said margin of said road being the edge of the stone surface of the roadbed of Heywood Road); said stake marking the point of intersection of said margin of said road and a line drawn on topographical elevation 2170; thence proceeding along and with the said margin of said road, the eastern boundary line of the property of Jack Ben Creasman and wife, Norma K. Creasman, North 5 deg. 34 min. 01 sec. East 120 feet, more or less, to a stake in said margin of said road, the common corner of the property of Jack Ben Creasman, *et ux*, and J. J. Creasman; thence proceeding along and with the southern line of the J. J. Creasman tract 42 feet, more or less, to the point where said line is intersected by topographical elevation line 2170; thence proceeding along and with topographical elevation line

2170 South 9 deg. 42 min. 28 sec. East 90 feet, more or less, to the place of the BEGINNING.

Containing 0.042 acre, more or less, and being a triangular strip bounded on the East by the margin of Heywood Road (the western edge of the stone surface of Heywood Road), on the North by the property of J. J. Creasman and on the West by topographical elevation line 2170, and being also the area defined on petitioner's Exhibit 'B,' by the points and lines marked W-O-X B-C-D; and

Being all of the property of Jack Ben Creasman and wife, Norma K. Creasman, lying east of and below the elevation of topographical elevation 2170 as projected and shown on petitioner's Exhibit 'B'.

TO HAVE AND TO HOLD the above described land and premises with all the appurtenances thereunto belonging or in anywise appertaining unto the petitioner, its successors and assigns forever, free and clear from all liens, claims and encumbrances of whatsoever kind and nature, and the defendants Jack Ben Creasman and wife, Norma K. Creasman, are hereby divested and barred of all right, title and interest in said described lands and premises."

Thereafter, the judgment provides for the payment by petitioner of the additional sum of $4,350.00 *(sic)* ($1,150.00 having been theretofore paid by petitioner into the office of the clerk), plus interest as set forth in detail, and costs.

Petitioner excepted and appealed.

The judgment also contained a provision in which the court denied *as a matter of law* an application by respondents that the court fix and allow fees to respondents' counsel and order payment thereof by petitioner. Respondents excepted to and appealed from this provision of the judgment.

*Van Winkle, Walton, Buck & Wall and Herbert L. Hyde for petitioner.*

*Lamar Gudger, Sanford W. Brown and James P. Erwin, Jr., for respondents Creasman.*

BOBBITT, J.

## PETITIONER'S APPEAL

In condemnation proceedings, the petition, when filed by the condemnor, "must contain a description of the real estate which the corporation seeks to acquire." G.S. 40-12; 29 C.J.S., Eminent Domain § 259; 18 Am. Jur., Eminent Domain § 325. The condemnor must "first locate the property." *Gastonia v. Glenn,* 218 N.C. 510, 11 S.E. 2d 459. Ordinarily, absent an amendment, the only property a condemnor may acquire is that described in the petition. See 29 C.J.S., Eminent Domain § 322.

Here, the petition describes a parcel of land fronting 69.82 feet on the western margin of Heywood Road, containing (.012) 12/1000ths of an acre, while the judgment describes a parcel of land fronting 120 feet, more or less, on the western margin of Heywood Road, containing (.042) 42/1000ths of an acre. This unusual result was reached in the manner stated below.

No issue or controversy was raised by the pleadings or otherwise prior to the commencement of the trial concerning the location on the earth's surface of the parcel of land petitioner sought to condemn. However, during the testimony of Mr. Gove, petitioner's first witness, it became apparent that a controversy did exist as to the location of the western margin of Heywood Road. Mr. Gove, who prepared Exhibit A from a survey he made, testified, in effect, the western margin of Heywood Road as shown on Exhibit A is some eleven or twelve feet west of the western edge of the gravel or stone roadway. If so, the western margin of Heywood Road was west of an embankment and in a portion of the area treated as respondents' yard. Respondents asserted the western edge of the gravel or stone roadway was the western margin of Heywood Road.

Respondents contended: (1) The parcel of land petitioner sought to condemn is described in the petition as *beginning* in the western margin of Heywood Road. (2) Petitioner sought to condemn up to the line (elev. 2170) south 9° 42′ 28″ east 57.44 feet as shown on Exhibit A. (3) Petitioner sought to condemn a triangular parcel (.042 acre) enclosed by these lines: (a) the line south 9° 42′ 28″ east extended to the western edge of the gravel or stone roadway; (b) the line south 51° 58′ 27″ west extended to the western edge of the gravel or stone roadway; (c) a closing line along the western edge of the gravel or stone roadway 120 feet more or less (north 5° 34′ 01″ east).

Petitioner contended: It sought to condemn the parcel of land (.012 acre) described in its petition, having a frontage of 69.82 feet on the western margin of Heywood Road, and no more.

A map identified as Exhibit B was placed upon a blackboard. Originally, Exhibit B was only a greatly enlarged copy of Exhibit A. However, additional lines were drawn thereon and particular locations thereon were identified by letters. For present purposes, it is sufficient to say: The western margin of Heywood Road, if located as contended by respondents, was indicated on Exhibit B by the line P-W-O. The western margin of Heywood Road, if located as contended by petitioner and as shown on Exhibit A, was indicated on Exhibit B as the line A-D-B.

A controversy as to what land a condemnor is seeking to condemn has no place in a condemnation proceeding. It is for the condemnor to determine what land it seeks to condemn (*Morganton v. Hutton & Bourbonnais Company*, 251 N.C. 531, 112 S.E. 2d 111) and to describe it in its petition by reference to uncontroverted monuments. The court's efforts to resolve by stipulation the controversy as to what land petitioner sought to condemn were in vain. There was no amendment of the petition. In this situation, the court, over petitioner's objection, submitted the first issue. The only apparent purpose thereof was to have the jury determine what land petitioner sought to condemn. While decision is based on other grounds, it is noted that uncertainty as to what land was being condemned gave rise to uncertainty in much of the testimony relating to before and after fair market values of respondents' property.

Petitioner, prior to the next trial, should determine and identify on the earth's surface by uncontroverted monuments the land it seeks to condemn and amend its petition so as to describe this parcel of land.

Respondents offered much evidence tending to show the location, construction, etc., of their dwelling and other improvements on their lands. No part of such improvements are on the parcel (under either contention) petitioner seeks to condemn. All are on the remaining portion of .413 acre, more or less.

There was evidence tending to show the following:

Powell Creek flows west into the French Broad River. Petitioner constructed its dam across Powell Creek approximately twenty-five hundred feet east of the French Broad. The buildings constituting the power plant are 1000-1500 feet east of the dam. The power plant produces electricity from coal. The lake (Skyland Lake), "325 acres of water," is described as a "cooling lake." "(C)ooling water" is taken out of the lake at one point and pumped through the condensers. The condensed boiler steam then enters the cooling lake at a different point, circulates therein and becomes available for further use. The furnace of one boiler "is a bigger area than this Court Room." The smokestack

"is a concrete stack" and "is 393 feet high." When the water of Powell Creek is insufficient, additional water is pumped from the French Broad into Skyland Lake. A railroad line was constructed for the purpose of transporting coal to the power plant.

The male respondent testified: "The steam plant will be located one mile due west from my home." Another witness testified: "This smoke-stack is half a mile from (respondents') property." The male respon-dent testified: "My home is going to be some 600 feet from the railroad track." Another witness testified the railroad line was a thousand feet from respondents' property.

An arm of Skyland Lake (at normal water line) will be some forty feet from and within sight of respondents' property. The land petitioner seeks to condemn is being acquired as a means of access to the edge of Skyland Lake.

Formerly, respondents, proceeding north from their property along Heywood Road, crossed a bridge (422 feet north of their property) over Powell Creek and continued on Heywood Road until they reach-ed U. S. Highway #25. Then they proceeded on #25 to Skyland or be-yond to Asheville. Now Heywood Road dead ends a short distance north of respondents' property, having been barricaded after destruc-tion of the bridge over Powell Creek, and respondents cannot now (on account of Skyland Lake) travel the said route to #25. The road pres-ently available to respondents as a means of access to #25 necessitates travel for an additional mile or so if en route (north) to Skyland or Asheville rather than (south) to Hendersonville.

Although much evidence was admitted, over objections by petitioner, as to the matters referred to therein, the court instructed the jury as follows: ". . . I instruct you to disregard any and all testimony relat-ing to anticipated inconveniences and damages of the defendants from insects, fogs, ashes blown from ash disposal area, fumes blown by the wind, appearance of steam plant, water pollution and noxious odors, the presence of coal smoke and the growth of algae and other matter in and along the edge of the lake, and any and all other speculative and conjectural matters." The instruction was correct. However, for rea-sons indicated below, the admission of the evidence was error. We apprehend this instruction, given at the end of a protracted trial, was insufficient to remove the prejudicial effect of a mass of incompetent evidence bearing upon the matters referred to in said instruction.

Much evidence was admitted, over objections by petitioner, to the effect respondents' water service and sewer service were less satisfac-tory after relocation of the lines due to the impounding of water to form Skyland Lake. The record shows the court, before charging the

jury, stated to counsel for petitioner that he would instruct the jury respondents could not recover compensation on account of the changes in the water and sewer lines. The court, through inadvertence, failed to give such instruction.

Much evidence was admitted, over objections by petitioner, as to the inconvenience caused by the closing of Heywood Road north of respondents' property on account of (1)   the greater distance to the Skyland business area, (2)   the greater distance to church, (3)   a less convenient place for the children to board the school bus, etc. Evidence offered by petitioner tends to show the said portion of Heywood Road was closed and an alternate road provided by action of the Board of Commissioners of Buncombe County pursuant to G.S. 153-9(17). In this connection, attention is called to *Snow v. Highway Commission, ante,* 169, 136 S.E. 2d 678.

Much evidence was admitted, over objection by petitioner, to the effect the construction, maintenance and operation by petitioner of said steam plant, together with the dam, the lake, the railroad, etc., in a desirable rural residential community, seriously and adversely affected the fair market value of property in the community. Concerning such evidence, the court instructed the jury as follows: "They (respondents) say and contend that this was formerly residential property and that that was its highest and best use, was for residential property. They say and contend that the location of this lake, the location of the plant in the immediate vicinity or even some two or three thousand feet or further, you will recall the evidence about that, that it tends to change the residential nature of the neighborhood into an industrial area, so they say and contend that that decreases the value of their property and that they are entitled to have you assess the diminution in value caused by that." While couched in the language of a contention, this instruction implies clearly that these matters were for consideration by the jury as a basis for the awarding of damages. For reasons stated below, the admission of this evidence and the (quoted) instruction with reference thereto, constitute prejudicial error.

Just compensation, to which the landowner is entitled, is the difference between the fair market value of the property *as a whole* immediately before and immediately after the appropriation (condemnation) of a portion thereof. *Abernathy v. R.. R.,* 150 N.C. 97, 63 S.E. 180; *Light Co. v. Carringer,* 220 N.C. 57, 16 S.E. 2d 453. Under our decisions, "the owner of land, a part of which is taken under the right of eminent domain, may recover as compensation not only the value of the land taken, but also *the damages thereby caused,* if any, to the

remaining land." (Our italics). *Power Co. v. Hayes,* 193 N.C. 104, 107, 136 S.E. 353; *Moses v. Morganton,* 195 N.C. 92, 99, 141 S.E. 484.

In *United States v. Grizzard,* 219 U.S. 180, 31 S. Ct. 162, 55 L. Ed. 165, 31 L.R.A. (N.S.) 1135, Mr. Justice Lurton said: "Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder *resulting from that taking,* embracing, of course, *injury due to the use to which the part appropriated is to be devoted.*" (Our italics). This excerpt from Mr. Justice Lurton's opinion has been quoted with approval by this Court: *Power Co. v. Hayes, supra; Moses v. Morganton, supra; Ayden v. Lancaster,* 197 N.C. 556, 150 S.E. 40; *Light Co. v. Rogers,* 207 N.C. 751, 178 S.E. 575.

In *Boyd v. United States* (C.A. 8th), 222 F. 2d 493, Circuit Judge Johnsen, after quoting said excerpt from *Grizzard,* continues: "The use to which an appropriated part of a tract is to be devoted means, for purposes of any depreciating injury occasioned to its adjoining remainder, 'the uses to which the land taken may, or probably will, be put.' *Sharp v. United States,* 191 U.S. 341, 352, 24 S. Ct. 114, 116, 48 L. Ed. 211."

Decisions cited by respondents, considered below, are in accord with and applications of the rule stated above.

In *Durham v. Lawrence,* 215 N.C. 75, 200 S.E. 880, the city condemned a permanent easement consisting of a right of way (25 feet wide and extending 2161.7 feet) across defendants' land for a sewer outfall and pipe line and on said sewer line through defendants' land there were five manholes. This Court found no error in the statement by the trial judge of defendants' contention there was reasonable ground to apprehend the sewer lines would sometimes become stopped up between manholes and cause the manholes to overflow. Suffice to say, defendants' said contention related to damage to their remaining lands on account of the use of the right of way for the very purpose for which it was condemned.

In *Power Co. v. Hayes, supra,* it was held the owners "were entitled to recover compensation both for the land actually taken and for the permanent injuries caused to the remaining land *by the taking of a part thereof, and using same for impounding water thereon.*" (Our italics).

In *Power Co. v. Russell,* 188 N.C. 725, 125 S.E. 481, and in *Colvard v. Light Co.,* 204 N.C. 97, 167 S.E. 472, and in *Light Co. v. Carringer, supra,* the power company had condemned (appropriated) an easement across a tract of land. It was held the owner was entitled to recover

compensation for damages to his remaining property on account of the construction and maintenance of power lines on the condemned portion.

In *R. R. v. Manufacturing Co.*, 169 N.C. 156, 85 S.E. 390, the railroad company condemned a right of way over defendant's lands, upon which defendant had erected a mill, buildings for employees and other appurtenances. This Court held competent evidence as to noise, smoke, cinders, jarring, discomfort, inconveniences, and other like causes *incident to the running of the trains on the right of way*, as bearing upon the depreciation in value of the whole property on account of the use of the right of way for the purposes for which it was condemned. Of like import: *R. R. v. Armfield*, 167 N.C. 464, 83 S.E. 809.

The decisions cited in the preceding paragraph are in accord with the following: "When part of a tract of land is taken for a railroad, while the personal annoyance of the owner cannot be considered, the damage from the noise, smoke, soot, ashes, and vibration necessarily arising from the operation of the trains *upon the land taken*, so far as it affects the market value of the remaining land, is a proper element of damage. It has been held, however, that such damage must be peculiar to the remainder area and not such as is common to all neighborhood property." (Our italics) Nichols on Eminent Domain, Third Edition, Volume 4, § 14.2462, and cases cited; Lewis on Eminent Domain, Third Edition, § 710.

Where a tract of land has been used and treated as an entity, it must be so considered in assessing compensation for the taking of part of it. "If only a portion of a single tract is taken, the owner's compensation for that taken includes any element of value arising out of the relation of the part taken to the entire tract." *United States v. Miller*, 317 U.S. 369, 87 L. Ed. 336, 63 S. Ct. 276. "The rule supported by better reason and the weight of authority is that the just compensation assured by the 5th Amendment to an owner a part of whose land is taken for public use, does not include the diminution in value of the remainder, caused by the acquisition and use of adjoining lands of others for the same undertaking." *Campbell v. United States*, 266 U.S. 368, 69 L. Ed. 328, 45 S. Ct. 115, and cases cited; Annotation: 170 A.L.R. 721 and supplemental decisions.

The owner is entitled to compensation for damage, if any, to his remaining land, which "is a consequence of the taking" of a portion thereof, 18 Am. Jur., Eminent Domain § 265, that is, "for the injuries accruing to the residue from the taking," 29 C.J.S., Eminent Domain § 139, which includes damage, if any, resulting from the condemnor's use of the appropriated portion.

In *Boyd v. United States, supra,* the Government condemned, as part of the site for an air base, 15.7 acres of a farm, leaving the owners with their residence, outbuildings and 66.3 acres of land. The air base consisted of an area of 5,139.47 acres, the 15.7 acres being located at the extreme northern tip. It was held necessary, in order for the owners to recover compensation for damages to their remaining property, to show "some particular utilization of their 15.7 taken-acres in the project" that would constitute "a direct and identifiable element of depreciation," *e.g.,* the intended use thereof as a location for the storage of large gasoline tanks or ammunition. It was held the owners could not recover for depreciation caused by the location and operation of the air base generally and not "provably a product of their 15.7 taken-acres," for in this respect they would be "in no different position of damage than their neighbors, whose farms the air base adjoined, although none of their land had been appropriated for inclusion therein." In accord: *United States v. Kooperman* (C.A. 2nd), 263 F. 2d 331; *Winn v. United States* (C.A. 9th), 272 F. 2d 282; *Spring Valley Water Works & Supply Co. v. Haslach,* 202 N.Y.S. 2d 889.

Petitioner seeks to condemn a small (under either contention) triangular portion of respondents' lands. Respondents are entitled to recover compensation both for the land actually taken and for the permanent injuries to their remaining property caused by the severance and the use to which the land taken may, or probably will, be put.

Much of the evidence admitted over objections by petitioner (there are nearly 350 exceptions to rulings on evidence) concerns matters relating to general changes in the community, including the depreciation of the fair market value of residential property, caused by the construction, maintenance and operation by petitioner of said steam plant, together with the dam, the lake, the railroad, etc. Such damages, if any, as may be caused *thereby* to respondents' remaining property occur without reference to whether any portion of respondents' property is condemned. In short, they do not result from the taking of a portion of respondents' property.

This statement from *Spring Valley Water Works & Supply Co. v. Haslach, supra,* is appropriate to the present factual situation: "Therefore, it is clear that consequential damages to be awarded the owner for a taking of a part of his lands are to be limited to the damages sustained by him by reason of the taking of the particular part and of the use to which such part is to be put by the acquiring agency. No additional compensation may be awarded to him by reason of proper public use of other lands located in proximity to but not part of the lands taken from the particular owner. The theory behind this denial

of recovery is undoubtedly that such owner may not be considered as suffering legal damage over and above that suffered by his neighbors whose lands were not taken."

On petitioner's appeal, for error in the admission of incompetent evidence and in the instruction with reference to such evidence, petitioner is entitled to and is awarded a new trial.

## RESPONDENTS' APPEAL

While the award of a new trial vacates the judgment and verdict, we deem it appropriate to consider and decide the question presented by respondents' appeal. Their appeal is from the provision in the judgment in which the court denied their application for an order fixing and allowing fees to their counsel and ordering payment thereof by petitioner. This provision of the judgment is considered and treated as if it were a separate order.

The court's ruling and order were correct. The counsel fees the court is authorized to tax in condemnation proceedings under G.S. 40-19 are fees to counsel appointed by the court "to appear for and protect the rights of any party in interest who is unknown or whose residence is unknown" in accordance with G.S. 40-24. *R. R. v. Goodwin*, 110 N.C. 175, 14 S.E. 687; *Durham v. Davis*, 171 N.C. 305, 88 S.E. 433. Hence, the court "order" denying respondents' said application is affirmed.

On petitioner's appeal:   New trial.

On respondents' appeal:   Order affirmed.