TYSON, Judge.
 

 *334
 
 Defendants appeal from judgment entered upon a jury's verdict returned on just compensation. We find no error.
 

 I. Background
 

 Landmark at Battleground Park ("Landmark") is a 240-unit apartment complex located on Drawbridge Parkway in Greensboro, North Carolina. The named Defendants are the current owner, former owner, mortgage holder, and lessee of Landmark.
 

 On 11 March 2013, the North Carolina Department of Transportation ("NCDOT") condemned a 2.193 acres portion of Landmark's property for construction of a portion of "the Greensboro Urban Loop." The elevated highway was constructed near and on an angle relative to the front entrance of the property.
 

 Landmark is owned by Defendant LAT Battleground Park, LLC ("LAT Battleground"). LAT Battleground purchased the property from Defendant, Mission Battleground Park DST, for $14,780,000.00, with knowledge of and during the pendency of the condemnation.
 

 Prior to the highway construction, the apartment complex was described as "tucked away" from the road and situated "in the woods" on 32.76 acres. A heavily wooded tree buffer existed adjacent to the road. Landmark's secluded location was asserted to provide a market
 
 *335
 
 advantage for prospective tenants. The outdoor amenities, including pools, volleyball and tennis courts, and wooded areas are "main selling points" for potential residents. Drawbridge Parkway was a low traffic volume, two-lane roadway with a posted thirty mile-per-hour speed limit prior to the construction. Drawbridge Parkway was relocated on two lanes closer to the complex on property taken as part of this condemnation.
 

 The highway construction eliminated the wooded buffer in front of the property, part of which was located on the Drawbridge Parkway's right-of-way. The elevated six-lane highway runs at an angle in front of the property, thirty-five to forty feet above the ground. Evidence presented showed a portion of the highway was constructed over LAT Battleground's property.
 

 The highway plans include construction of a 15-foot noise wall, rising from the highway to fifty to fifty-five feet in front of Landmark. The construction plans also include another thirty-five foot noise wall on Drawbridge Parkway, directly across the street from Landmark.
 

 The parties did not agree upon the amount of damages and compensation owed to Landmark for the property taken. NCDOT deposited $276,000.00 with the Guilford County Clerk of Superior Court as its estimate of just compensation. Landmark claimed NCDOT's estimate was grossly inadequate, and asserted just compensation for the appropriation and damages ranged between $3,100,000.00 and $3,700,000.00.
 

 NCDOT filed a complaint in Guilford County Superior Court to obtain a determination of just compensation due. The cause was tried before a jury on 29 June 2015. Defendants' evidence tended to show damages of $3,169,175.00 incurred from the construction of the highway project across a portion of the property.
 

 NCDOT presented two expert witnesses. One expert witness testified Defendants' damages were $276,000.00, the amount of the deposit with the clerk of court. NCDOT's other expert witness testified Defendants' damages were $1,271,850.00. The jury returned a verdict, and determined $350,000.00 was just compensation for damages arising from the taking of the property. LAT Battleground appeals.
 

 II. Issues
 

 LAT Battleground argues the trial court erred by: (1) excluding James Collins' expert opinion testimony on fair market value; (2)
 

 *481
 
 excluding a sound and noise demonstration by LAT Battleground's acoustical expert, Dr. Noral Stewart; (3) declining to hold a hearing on the issue of juror misconduct and denying LAT Battleground's motion for a new trial
 
 *336
 
 based upon juror misconduct; and (4) giving a special jury instruction requested by NCDOT.
 

 III. Evidentiary Rulings
 

 A. Standard of Review
 

 The trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony."
 
 State v. Bullard
 
 ,
 
 312 N.C. 129
 
 , 140,
 
 322 S.E.2d 370
 
 , 376 (1984). The standard of review for a trial court's evidentiary ruling is abuse of discretion.
 
 Marley v. Graper
 
 ,
 
 135 N.C.App. 423
 
 , 425,
 
 521 S.E.2d 129
 
 , 132 (1999). "To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision."
 
 Wachovia Bank v. Clean River Corp.
 
 ,
 
 178 N.C.App. 528
 
 , 531,
 
 631 S.E.2d 879
 
 , 882 (2006) (citation and emphasis omitted).
 

 B. Opinion Testimony and Report of James Collins
 

 1. Preservation of Error
 

 NCDOT argues LAT Battleground did not preserve the trial court's ruling on the admissibility of Mr. Collins' testimony and evidence for appellate review, because NCDOT did not call Mr. Collins as a witness at trial. We disagree.
 

 Pursuant to Rule 103 of the Rules of Civil Procedure:
 

 (a) Effect of erroneous ruling.-Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 

 ....
 

 (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
 

 Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.
 

 N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2015).
 

 LAT Battleground made an offer of proof of the substance of Mr. Collins' testimony, which appears in the record. This issue was preserved under the plain language of Rule 103, and is properly before us.
 

 *337
 

 See
 

 GE Betz, Inc. v. Conrad
 
 ,
 
 231 N.C.App. 214
 
 , 232,
 
 752 S.E.2d 634
 
 , 648 (2013) ("A motion
 
 in limine
 
 is typically insufficient to preserve for appeal the admissibility of evidence; however, a party may preserve the exclusion of evidence for appellate review by making a specific offer of proof."). This argument is overruled.
 

 2. Requirement of
 
 Voir Dire
 

 LAT Battleground argues the trial court erred by ruling upon NCDOT's motion to exclude Mr. Collins' opinion and evidence without conducting a
 
 voir dire.
 
 It asserts the absence of a
 
 voir dire
 
 deprived the court of the opportunity to understand the nature and scope of Mr. Colllins' testimony before deciding to exclude it.
 

 LAT Battleground cites no binding precedent which requires the trial court to conduct a formal
 
 voir dire
 
 hearing prior to ruling on a motion
 
 in limine
 
 . LAT Battleground cites
 
 Floyd v. Allen
 
 , 2008 N.C. App. LEXIS 2000,
 
 2008 WL 4779737
 
 , *7 (N.C. Ct. App. Nov. 4, 2008), an unpublished opinion of our Court, in which the Court held it was error to exclude expert testimony when the trial court ruled on the motion within fifteen minutes, and without considering the expert's deposition or other evidence of his anticipated testimony.
 

 Here, the record shows the trial court heard arguments of counsel and considered Mr. Collins' 124-page report, which included his credentials, research, methodology, and opinion. The trial court took the matter under advisement during the overnight recess, far different than the facts present in
 
 Floyd
 
 . The information presented to and considered by the trial court was sufficient to allow the court to properly rule upon NCDOT's motion
 
 *482
 

 in limine
 
 without holding a formal
 
 voir dire.
 
 This argument is overruled.
 

 3. Trial Court's Ruling on N.C. Gen. Stat. § 93A-83
 

 N.C. Gen. Stat. § 93A-83, a provision of the regulatory Real Estate License Law, provides a licensed real estate broker in good standing "may prepare a broker price opinion or comparative market analysis and charge and collect a fee for the opinion," if the list of requirements in subsection (c) of the statute are met. N.C. Gen. Stat. § 93A-83(a) (2015). The terms "broker price opinion" and "comparative market analysis" are statutorily defined as
 

 an estimate prepared by a licensed real estate broker that details the probable selling price or leasing price of a particular parcel of or interest in property and provides a varying level of detail about the property's condition,
 
 *338
 
 market, and neighborhood, and information on comparable properties, but does not include an automated valuation model.
 

 N.C. Gen. Stat. § 93A-82 (2015).
 

 The statute also prohibits a licensed broker from preparing an appraisal. The statute states:
 

 Notwithstanding any provisions to the contrary, a person licensed pursuant to this Chapter may not knowingly prepare a broker price opinion or comparative market analysis for any purpose in lieu of an appraisal when an appraisal is required by federal or State law. A broker price opinion or comparative market analysis
 
 that estimates the value of or worth a parcel of or interest in real estate rather than sales or leasing price shall be deemed to be an appraisal and may not be prepared by a licensed broker
 
 under the authority of this Article, but may only be prepared by a duly licensed or certified appraiser, and shall meet the regulations adopted by the North Carolina Appraisal Board.
 
 A broker price opinion or comparative market analysis shall not under any circumstances be referred to as a valuation or appraisal.
 

 N.C. Gen. Stat. § 93A-83(f) (2015) (emphases supplied).
 

 The statute sets forth eleven enumerated "required contents" of a broker price opinion or comparative market analysis. N.C. Gen. Stat. § 93A-83(c) (2015). Included in these requirements is a disclaimer, which states as follows:
 

 "This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit."
 

 N.C. Gen. Stat. § 93A-83(c)(10) (2015).
 

 LAT Battleground retained Mr. Collins, a licensed real estate broker and certified property manager ("CPM"), to provide an independent analysis of a "broker price opinion or comparative market analysis"
 

 *339
 
 of Landmark before and after the taking. N.C. Gen. Stat. § 93A-83(a). Mr. Collins opined the fair price for Landmark before the taking was $15,338,000.00, and a fair price after the taking of $11,603,733.00, a difference of $3,734,276.00. Mr. Collins explained his opinion and market analysis in a 124-page report.
 

 On the morning of trial, NCDOT moved to exclude the testimony and report prepared by Mr. Collins under the provisions of N.C. Gen. Stat. § 93A-83. NCDOT argued Collins' report failed to meet the statutory requirements for a broker price opinion or comparative market analysis, violated the restrictions imposed by the statute regarding a broker price opinion or comparative market analysis, and violated Rule of Evidence 702.
 

 The trial court determined Mr. Collins' report violated N.C. Gen. Stat. § 93A-83(f), because it "purports to offer a fair market analysis before and after the taking that was determined on history bases." The court further stated the report "repeatedly refers to a fair market valuation and such references may not be offered at trial." The court allowed Mr. Collins' testimony before the jury, but limited him to offering an opinion on sales and leasing prices for the property.
 

 *483
 
 LAT Battleground chose not to call Mr. Collins as a witness. LAT Battleground presented the testimony of Michael Clapp, a certified appraiser. Mr. Clapp testified the fair market value of the property before the taking was $13,944,250.00, and the fair market value after the taking was $10,775,075.00, a difference of $3,169,175.00.
 

 NCDOT's certified appraiser, Rod Meers, testified the fair market value of Landmark before the taking was $14,835,100.00, and the fair market value after the taking was $14,559,050.00, for a difference of $276,050.00. Another certified appraiser, J. Thomas Taylor, testified for NCDOT that the fair market value of Landmark before the taking was $14,743,975.00, and the fair market value after the taking was $13,472,125.00, for a difference of $1,271,850.00. The jury did not adopt the exact value opinions of any of the appraisers in determining its verdict of just compensation.
 

 Mr. Collins' report repeatedly states it is an opinion of the "fair market value" of the property, before and after the taking, rather than the "probable selling price," which would be permitted under the statute. Under the plain language of the statute, Mr. Collins, a licensed real estate broker, who is not also a licensed appraiser, is not permitted to prepare "a valuation appraisal." N.C. Gen. Stat. § 93A-83(f). The trial
 
 *340
 
 court properly held Mr. Collins was bound by the restriction set forth in the statute in limiting his testimony. This assertion of error is overruled.
 

 C. Exclusion of the Sound Demonstration
 

 LAT Battleground argues the trial court abused its discretion by excluding a sound and noise demonstration prepared by Dr. Noral Stewart. We disagree.
 

 Dr. Stewart was tendered and accepted as an expert witness in the areas of acoustics, noise control, and environmental noise. LAT Battleground sought to introduce into evidence a sound demonstration as part of Dr. Stewart's testimony to show the purported increase in the noise levels in the apartment complex before and after the taking and construction.
 

 The test for determining whether a demonstration is admissible "is whether, if relevant, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, under Rule 403 of the Rules of Evidence."
 
 State v. Witherspoon
 
 ,
 
 199 N.C.App. 141
 
 , 149,
 
 681 S.E.2d 348
 
 , 353 (2009) (citation omitted). The sounds Dr. Stewart used for the demonstration was "pink noise," which is a broadband sound, rather than highway noise. Dr. Stewart opined that the noise levels in Landmark would be up to four times louder as a result of the taking, and was attempting to show various decibel levels of sound through this demonstration.
 

 Defendants informed the trial court that their experts had relied upon estimates of increased noise in determining their values, but had not heard Dr. Stewart's sound demonstrations. The court performed a Rule 403 balancing test, and determined: (1) Defendant's valuation experts did not consider the sound demonstrations in formulating their opinions of value; (2) the demonstration was of a sound that was not similar to highway noise; (3) the noise generated was based on an average, inflated by ten percent; and, (4) a potential tenant or resident "would not hear an average," and excluded the demonstration.
 

 Based upon these considerations, LAT Battleground has failed to show the trial court abused its discretion in excluding Dr. Stewart's sound demonstration. This argument is overruled.
 

 IV. Juror Misconduct
 

 LAT Battleground argues the trial court erred by failing to hold an evidentiary hearing on the issue of juror misconduct and by denying their motion for a new trial. We disagree.
 

 *341
 
 After the jury's verdict was announced, counsel for LAT Battleground spoke with Jurors Number Five and Six. Both jurors disclosed to counsel that "extraneous" information was before the jury during deliberations. Juror Number Six told the jury that through his work as a civil engineer, he knew that NCDOT was spending millions of dollars constructing "noise walls" at Landmark. Evidence of the planned construction of noise
 
 *484
 
 walls was in evidence and before the jury, but an estimated cost of the noise barrier walls had not been introduced at trial.
 

 The trial concluded on 7 July 2015. The trial court's judgment was entered on 30 July 2015. On 10 August 2015, LAT Battleground filed a motion for a new trial under Rule 59(a)(2), based upon juror misconduct. On 2 September 2015, LAT Battleground filed a request for an evidentiary hearing on the issue of juror misconduct.
 

 A. Standard of Review
 

 "[A] motion for a new trial is addressed to the sound judicial discretion of the trial judge and is not reviewable in the absence of an abuse of discretion
 
 ."
 

 Smith v. Price
 
 ,
 
 315 N.C. 523
 
 , 533,
 
 340 S.E.2d 408
 
 , 414 (1986) (citation omitted).
 

 B. Analysis
 

 Rule 606(b) of the Rules of Evidence provides:
 

 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith,
 
 except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention
 
 or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
 

 N.C. Gen. Stat. § 8C-1, Rule 606(b) (2015) (emphasis supplied).
 

 Extraneous information is defined as
 

 Information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced into evidence. It does not include
 
 *342
 
 information which a juror has gained in his experience which does not deal with the defendant or the case being tried.
 

 State v. Rosier
 
 ,
 
 322 N.C. 826
 
 , 832,
 
 370 S.E.2d 359
 
 , 363 (1988). "When there is substantial reason to fear that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial."
 
 State v. Black
 
 ,
 
 328 N.C. 191
 
 , 196,
 
 400 S.E.2d 398
 
 , 401 (1991).
 

 In ruling on LAT Battleground's motion for a new trial, the court relied solely on the affidavit of Patrick Kane, Esq., the attorney for LAT Battleground who spoke with Jurors Number Five and Six after the trial. Mr. Kane's affidavit states that he spoke with the two jurors, and learned that the jury had heard from Juror Number Six that the cost of the noise barrier walls was "millions of dollars." Juror Number Six told Mr. Kane that his work involves designing roadways, and he has extensive experience in condemnation of properties for roadway construction, and had consulted on projects involving NCDOT in the past.
 

 The trial court found that the statement made by Juror Number Six that the sound walls "cost millions of dollars" was general, vague, and related to a tangential matter. The court determined that the juror's statement was not "extraneous information," and declined to conduct an evidentiary hearing. The court noted LAT Battleground learned of Juror Number Six's statement to the jury on the same day as the verdict, but failed to take any steps to address the issue for over a month.
 

 Our courts have distinguished between "external" influences on jurors, which may be used to attack a verdict, and "internal" influences on a verdict.
 
 See
 

 State v. Quesinberry
 
 ,
 
 325 N.C. 125
 
 , 133-35,
 
 381 S.E.2d 681
 
 , 687 (1989),
 
 cert. granted and judgment vacated in light of McKoy
 
 ,
 
 494 U.S. 1022
 
 ,
 
 110 S.Ct. 1465
 
 ,
 
 108 L.Ed.2d 603
 
 (1990),
 
 death sentence vacated and remanded for new sentencing
 
 ,
 
 328 N.C. 288
 
 ,
 
 401 S.E.2d 632
 
 (1991) (holding juror consideration of the possibility of the defendant's parole was an "internal influence," "general information," and a "belief"
 

 *485
 
 or "impression," and did not constitute grounds to award a new trial).
 

 Jurors do not leave their general opinions, knowledge, and life experiences at the door of the courthouse. Evidence was presented to show construction of noise barrier walls in front of Landmark was planned and included as part of the highway project. Evidence was also presented to show the size, scale, length, and heights of the noise barrier walls. The trial court could fairly conclude most jurors would generally
 
 *343
 
 understand that substantial costs are incurred in erecting the immense concrete highway noise barrier walls.
 

 Juror Number Six's statement constituted tangential and non-specific "general information." LAT Battleground did not show a "substantial reason to fear that the jury ha[d] become aware of improper and prejudicial matters" during deliberations, to rise to an abuse of discretion to deny an evidentiary hearing.
 
 Black
 
 , 328 N.C. at 196,
 
 400 S.E.2d at 401
 
 . The statement of Juror Number Six during deliberations was not prejudicial "extraneous information" to warrant a new trial under Rule 606(b). This argument is overruled.
 

 V. Special Jury Instruction
 

 LAT Battleground argues the trial court erred by giving the jury an inapplicable special instruction. We disagree.
 

 A. Standard of Review
 

 This Court reviews a jury instruction to determine if an error occurred and, if so, whether "such error was likely, in light of the entire charge, to mislead the jury."
 
 Boykin v. Kim
 
 ,
 
 174 N.C.App. 278
 
 , 286,
 
 620 S.E.2d 707
 
 , 713 (2005) (citation omitted).
 

 B. Analysis
 

 Defendants introduced an animation and testimony to show the wetland area owned by the City of Greensboro across the street from Landmark was a "feature" that added value to their property. The land across the street was not owned by Defendants, belonged to the City of Greensboro, and was not part of the condemnation at issue. The City's property consisted of undeveloped woodlands and wetland. LAT Battleground argues the law requires "that view from the property be considered in the 'after' valuation."
 

 LAT Battleground asserts reversible error from the following jury instruction:
 

 Fair market value should not include the diminution in value of the remainder of the property caused by the acquisition and use of the adjoining lands of others for the same undertaking.
 

 NCDOT acquired only a portion of LAT Battleground's tract of property. Our Supreme Court has explained:
 

 If only a portion of a single tract is taken, the owner's compensation for that taken includes any element of value
 
 *344
 
 arising out of the relation of the part taken to the entire tract.
 
 United States v. Miller
 
 ,
 
 317 U.S. 369
 
 ,
 
 63 S.Ct. 276
 
 ,
 
 87 L.Ed. 336
 
 . "The rule supported by better reason and the weight of authority is that the just compensation assured by the 5
 
 th
 
 Amendment to an owner a part of whose land is taken for public use, does not include the diminution in value of the remainder, caused by the acquisition and use of adjoining lands of others for the same undertaking."
 
 Campbell v. United States
 
 ,
 
 266 U.S. 368
 
 ,
 
 45 S.Ct. 115
 
 ,
 
 69 L.Ed. 328
 
 .
 

 Carolina Power & Light Co. v. Creasman
 
 ,
 
 262 N.C. 390
 
 , 401,
 
 137 S.E.2d 497
 
 , 505 (1964). The Court further stated:
 

 No additional compensation may be awarded to him by reason of proper public use of other lands located in proximity to but not part of the lands taken from the particular owner. The theory behind this denial of recovery is undoubtedly that such owner may not be considered as suffering legal damage over and above that suffered by his neighbors whose lands were not taken.
 

 Id
 
 . at 402-03,
 
 137 S.E.2d at 506
 
 .
 

 LAT Battleground relies heavily on this Court's decision in
 
 Bd. of Transp. v. Brown
 
 ,
 
 34 N.C.App. 266
 
 ,
 
 237 S.E.2d 854
 
 (1977),
 
 aff'd per curiam
 
 ,
 
 296 N.C. 250
 
 ,
 
 249 S.E.2d 803
 
 (1978). In
 
 Brown
 
 , an eight-acre portion of the landowners' 52.2 acre tract was taken for construction of a "controlled access highway facility."
 
 Id
 
 . at 267,
 
 237 S.E.2d at 855
 
 . The
 
 *486
 
 trial court excluded all evidence of the effect of traffic noise from the highway on the landowners' remaining property, and instructed the jury not to consider such effect.
 
 Id
 
 .
 

 This Court held the exclusion of the effect of noise on the remaining property was error, and stated:
 

 Noise or any other element of damages to the remaining lands is compensable only if it is demonstrably resultant from the use of the particular lands taken. "If only a portion of a single tract is taken the owner's compensation for that taking includes
 
 any element of value arising out of the relation of the part taken to the entire tract.
 
 " (Emphasis added)
 
 United States v. Miller
 
 ,
 
 317 U.S. 369
 
 , 376,
 
 63 S.Ct. 276
 
 , 281,
 
 87 L.Ed. 336
 
 , 344 (1943).
 

 Id
 
 . at 269,
 
 237 S.E.2d at 856
 
 (added emphasis in original). This language in
 
 Brown
 
 pertains to circumstances in which the physical taking is of
 
 *345
 
 a portion of a parcel, and the remaining portion of property not taken is damaged thereby, also referred to as damage to the "remainder."
 
 Id
 
 . Here, LAT Battleground argues its residual or remaining property not physically taken was damaged by actions of NCDOT on the City of Greensboro's property across the street.
 

 LAT Battleground argues the trial court's instruction was error, because the destruction of the "view" from Landmark of the City of Greensboro's wetlands across the street should be included in just compensation. LAT Battleground conceded at oral argument that Landmark would not be entitled to just compensation if the City of Greensboro had damaged the "view" from Landmark by removing all of the trees on the wetlands across the street, by building a concrete wall there, or making other affirmative use of the City's property. As noted above, the undeveloped 2.193 acres portion taken from Landmark's 32.76 acres parcel was primarily used to relocate the existing two lane Drawbridge Parkway closer to the improved portions of Landmark's remaining parcel. A portion of the removed wooded buffer apparently was also located on the existing right of way for Drawbridge Parkway, and not on Landmark's property.
 

 The special jury instruction provided was a clear and correct statement of law. LAT Battleground has failed to show the instruction was likely to either mislead the jury or was prejudicial error. This argument is overruled.
 

 VI. Conclusion
 

 The trial court did not abuse its discretion in limiting Mr. Collins' testimony and evidence of "fair market value" of the property before and after the taking due to the restrictions set forth in N.C. Gen. Stat. § 93A-83. LAT Battleground has failed to show the trial court abused its discretion by excluding the sound demonstration prepared by Dr. Stewart, LAT Battleground's acoustical expert.
 

 The trial court did not err in denying LAT Battleground's motion for a new trial based upon juror misconduct. LAT Battleground has failed to show the trial court's jury instruction, that other owners' properties taken did not impact LAT Battleground's property, included a misstatement of law or was likely to mislead the jury. We also reject LAT Battleground's final contention that "cumulative errors" warrant a new trial.
 

 NO ERROR.
 

 Judges BRYANT and INMAN concur.