IN THE SUPREME COURT OF NORTH CAROLINA

No. 361PA16

Filed 2 March 2018

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION

v.

MISSION BATTLEGROUND PARK, DST; MISSION BATTLEGROUND PARK LEASECO, LLC, Lessee; LASALLE BANK NATIONAL ASSOCIATION, as Trustee for the Registered Holders of CD 2006-CD3 Commercial Mortgage Pass-Through Certificates; and LAT BATTLEGROUND PARK, LLC

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 791 S.E.2d 478 (2016), finding no error after appeal from a judgment entered on 30 July 2015 and orders entered on 24 September 2015 by Judge Richard S. Gottlieb in Superior Court, Guilford County. Heard in the Supreme Court on 7 November 2017.

*Joshua H. Stein, Attorney General, by Hilda Burnett-Baker, Special Deputy Attorney General, and Phyllis A. Turner, Assistant Attorney General, for plaintiff-appellee.*

*Smith Moore Leatherwood LLP, by Patrick M. Kane, Bruce P. Ashley, Kip D. Nelson, and Matthew Nis Leerberg, for defendant-appellants.*

*Wilson & Helms LLP, by Lorin J. Lapidus and G. Gray Wilson, for Civitas Institute, amicus curiae.*

*Bass Dunklin McCullough & Smith, PLLC, by Garth K. Dunklin, for James F. Collins, amicus curiae.*

MARTIN, Chief Justice.

In March 2013, the North Carolina Department of Transportation (DOT) condemned 2.193 acres of land in Greensboro, North Carolina, for a highway construction project. This land had previously been part of a 240-unit apartment complex that is now called Landmark at Battleground Park. The defendants in this case are the current and former owners, the lessee, and the mortgage holder of the Landmark apartment complex. In its Declaration of Taking and Notice of Deposit, DOT stated that it had deposited $276,000 with the Superior Court of Guilford County and indicated that defendants could seek disbursement of this money as partial or full compensation for the taking. Defendants argued that $276,000 did not amount to just compensation and demanded a trial to determine the correct amount of damages.

At trial, defendants sought to introduce James Collins, a licensed real estate broker, as an expert witness who would testify about the fair market value of the Landmark apartment complex before and after the taking. In his expert report, Mr. Collins compared the fair market value of the entire tract just before the taking with what the fair market value of the remainder of the tract would be after the construction of the highway. After comparing these two values, Mr. Collins opined that the proper amount of just compensation for the taking was $3.734 million.

After DOT moved in limine to exclude Mr. Collins' expert report and expert testimony, the trial court excluded Mr. Collins' report and prohibited him from testifying about the fair market value of the property in question based on N.C.G.S. § 93A-83, which governs the practice of providing broker price opinions and comparative market analyses. According to the trial court, Mr. Collins could provide a "broker price opinion or comparative market analysis" using his expertise as a broker, but that opinion or analysis would have to focus on the probable selling price of the property rather than on its fair market value. The trial court based its ruling specifically on the language of section 93A-83 and did not analyze any of Mr. Collins' proposed fair-market-value testimony under Rule 702 of the North Carolina Rules of Evidence. The trial court noted its discomfort with its conclusion, questioning whether the General Assembly had intended the result that the trial court reached. But the trial court ultimately stated that what it thought was "the plain reading of the statute" controlled.

The trial proceeded with Mr. Collins' report and fair-market-value testimony excluded. The trial court admitted testimony on fair market value from other experts. Two DOT experts argued that just compensation should be set at $276,050 and $1,271,850, respectively. The trial court allowed defendants to introduce testimony from another expert, who argued for a just compensation figure of $3,169,175. While instructing the jury, the trial court stated that "[f]air market value should not include the diminution in value of the remainder property caused by the acquisition and use

of the adjoining lands of others for the same undertaking." The jury ultimately returned a verdict setting just compensation for the taking at $350,000.

Defendants appealed this decision to the Court of Appeals, alleging, among other things, that Mr. Collins' report and his testimony on fair market value should have been admitted as evidence. Defendants also objected to the special jury instruction that we have just quoted. The Court of Appeals found no error and affirmed the trial court's decision. *N.C. Dep't of Transp. v. Mission Battleground Park, DST*, ___ N.C. App. ___, ___, 791 S.E.2d 478, 486 (2016). Defendants sought discretionary review of the statutory exclusion of Mr. Collins' testimony about fair market value, as well as of the allegedly improper jury instruction. We allowed discretionary review of these issues.

DOT argues that defendants did not properly preserve the exclusion of Mr. Collins' fair-market-value testimony for appellate review. But this argument is not properly before us, because DOT's response to defendants' petition for discretionary review did not state any additional issues that DOT sought to present. *See* N.C. R. App. P. 15(d). Our scope of review is therefore limited to the issues that defendants have raised.

Even if this issue were properly before us, however, it appears that defendants' offer of proof regarding Mr. Collins' testimony was sufficient to preserve the issue, regardless of whether defendants tried to call him to testify about fair market value

at trial. "An offer of proof under Rule 43(c) must be specific and must indicate what testimony the excluded witness would give." *Currence v. Hardin*, 296 N.C. 95, 100, 249 S.E.2d 387, 390 (1978). During the offer of proof, Mr. Collins laid out his credentials in detail, including his thirty-nine years of experience in the apartment complex business, during which he had estimated the fair market values of hundreds of apartment complexes. Mr. Collins also announced his $3.734 million estimate of the damages due to defendants and summarized the calculation that led to that estimate. We do not find any defect in this offer of proof.

We typically review a trial court's ruling on the admission or exclusion of expert testimony for abuse of discretion. *See State v. McGrady*, 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016). In this case, however, the decision to exclude testimony was based specifically on the interpretation of a statute. Because we review questions of statutory interpretation de novo, *In re Foreclosure of Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012), we likewise review any exclusion of evidence based specifically and only on statutory interpretation de novo.

DOT is arguing, in effect, that an expert witness needs to prepare an expert report on a given issue in order to give expert testimony on that issue. We assume, for the sake of argument, that this is true. But, DOT asserts, Mr. Collins could not lawfully prepare an expert report about fair market value because N.C.G.S. § 93A-83(f) forbids him from doing so. DOT thus concludes that Mr. Collins could not give expert testimony about fair market value. Under DOT's argument, then, Mr. Collins'

ability to give expert testimony about fair market value depends on his ability to prepare an expert report on fair market value without violating subsection 93A-83(f). We therefore focus on whether he could prepare the expert report on fair market value that he in fact prepared without violating that subsection.

Subsection 93A-83(f) states:

> **Restrictions.** — Notwithstanding any provisions to the contrary, a person licensed [as a real estate broker] pursuant to this Chapter may not knowingly prepare a broker price opinion or comparative market analysis for any purpose in lieu of an appraisal when an appraisal is required by federal or State law. A broker price opinion or comparative market analysis that estimates the value of or worth [of] a parcel of or interest in real estate rather than sales or leasing price shall be deemed to be an appraisal and may not be prepared by a licensed broker under the authority of this Article, but may only be prepared by a duly licensed or certified appraiser, and shall meet the regulations adopted by the North Carolina Appraisal Board. A broker price opinion or comparative market analysis shall not under any circumstances be referred to as a valuation or appraisal.

These restrictions distinguish between licensed brokers—who are allowed to provide estimates of the "probable selling price or leasing price" of real property under N.C.G.S. §§ 93A-82 and 93A-83(a) and (b)—on the one hand, and licensed or certified *appraisers*—who are allowed to provide estimates of the *value* of real property—on the other. The question, then, is whether this limitation on licensed brokers applies when a licensed broker prepares an expert report in a civil proceeding.

The second sentence of subsection 93A-83(f) may, at first glance, seem to be an impediment to Mr. Collins' preparing an expert report in this case. That sentence indicates that a broker price opinion (BPO) or a comparative market analysis (CMA) that estimates the value of property rather than the price of property will "be deemed to be an appraisal," and that a licensed broker cannot prepare that document "under the authority of this Article." N.C.G.S. § 93A-83(f) (2017). That last, quoted phrase is key to our analysis, though, and both the trial court and the Court of Appeals seem to have overlooked it.

That phrase refers to the authority given to licensed brokers in Article 6 of Chapter 93A—more specifically, to the authority given to licensed brokers in subsections 93A-83(a) and (b), which authorize brokers to prepare BPOs and CMAs and to collect fees for doing so. But the authority of a broker (or of anyone else) *to testify as an expert in court*, and thus to prepare an expert report, does not come from Article 6 of Chapter 93A in the first place. That authority instead comes from Rule of Evidence 702 and the cases that set out the standard for admission of expert testimony under that rule. Any person who can qualify as an expert under that standard, which is articulated in *State v. McGrady*, 368 N.C. 880, 787 S.E.2d 1, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and other pertinent caselaw, can testify without having to invoke any other source of authority. Meeting that standard is both necessary and sufficient.

Subsection 93A-83(f)'s language that a BPO or a CMA that contains an appraisal of value rather than an estimate of probable price "may only be prepared by a duly licensed or certified appraiser" does not change this conclusion. That language must be read in conjunction with the rest of the sentence in which it appears: when a licensed broker mistakenly relies on the authority set forth in Article 6 to prepare what is actually an appraisal—and, it implicitly follows, when a broker therefore *lacks* the authority to prepare that appraisal—the limitation that only an appraiser may prepare an appraisal kicks in. That limitation does not apply when a broker relies on a source of authority outside of Article 6 to prepare an expert report to support his in-court testimony.

In other words, because Mr. Collins did not prepare his expert report "under the authority of" Article 6 of Chapter 93A, and relied on the authority that Rule 702 purportedly gave him instead, his preparation of that report did not violate the second sentence of subsection 93A-83(f). This is true even if we assume what we need not, and do not, decide—namely, that Mr. Collins' expert report would also qualify as a BPO or a CMA under section 93A-82.

The statement in subsection 93A-83(f)'s third sentence—that a BPO or a CMA "shall not under any circumstances be referred to as a valuation or [an] appraisal"— does not present a problem for Mr. Collins' expert report either, for two reasons.

First, this statement simply requires that a BPO or a CMA not be *called* a valuation or an appraisal. Even assuming that his expert report was a BPO or a CMA, Mr. Collins complied with that requirement. He did not refer to his report as a "valuation" or an "appraisal" of the property taken, either in the report itself or elsewhere. He did purport to estimate the "fair market value" of the property in question, but that does not violate the third sentence of subsection (f) at all.

Second and more importantly, though, subsection (f)'s third sentence must be interpreted holistically with the rest of the statute. "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). Subsection (f) is labelled "Restrictions." Read in the context of section 93A-83 as a whole, this subsection's effect is to restrict—or, at least, to clarify the limits of—the authority that subsections 93A-83(a) and (b) grant to licensed brokers to issue BPOs and CMAs. The first sentence of subsection (f) indicates that a broker cannot prepare a BPO or a CMA in lieu of an appraisal when an appraisal is required by law; the second sentence of subsection (f) indicates that a broker cannot prepare what is, in substance, an appraisal but call it a BPO or a CMA. The restriction in the third sentence of subsection (f) is basically the inverse of the restriction in the second sentence; it

indicates that a broker cannot prepare what is, in substance, a BPO or a CMA but call it an appraisal or a valuation.

Subsection (f), then, is not a freestanding provision that applies to anything that in theory falls within the statutory definition of a BPO or a CMA. It simply limits, or clarifies preexisting limitations on, the authority granted in subsections 93A-83(a) and (b). Once again, Mr. Collins derived his purported authority to submit an expert report in this case from Rule 702, not from section 93A-83. We have already discussed why that fact makes the second sentence of subsection 93A-83(f) inapplicable here, and it makes the third sentence inapplicable here too.

It is worth noting that, under DOT's reading of the statute, subsection 93A-83(f) would bar a licensed broker from testifying about fair market value simply because he holds a broker's license—even when an intelligent layperson, without any license, *could* potentially testify about fair market value. Subsection (f) says nothing about whether an appraisal of property value can be done by a layperson, after all. But professional licenses grant an individual the right to legitimately engage in certain activities; they do not revoke capacities that the individual previously had. So, in addition to running afoul of the statute's meaning, DOT's reading of the statute would lead to absurd results.

Having established that the trial court erroneously invoked subsection 93A-83(f) to exclude Mr. Collins' expert testimony, we turn to the question of whether that

error was prejudicial or harmless. "In civil cases, '[t]he burden is on the appellant not only to show error but to enable the court to see that he was prejudiced or the verdict of the jury probably influenced thereby.' " *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 589, 403 S.E.2d 483, 490 (1991) (alteration in original) (quoting *Wilson Cty. Bd. of Educ. v. Lamm*, 276 N.C. 487, 492, 173 S.E.2d 281, 285 (1970)). In other words, defendants must show a "reasonable probability" that the jury would have reached a more favorable verdict had the trial court not excluded Mr. Collins' testimony about fair market value on erroneous statutory grounds. *See id.* (citing, inter alia, *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967)).

To begin with, there is a reasonable probability that the trial court would have admitted Mr. Collins' fair-market-value testimony under Rule 702 if the trial court had not excluded that testimony based on subsection 93A-83(f). The trial court would have permitted Mr. Collins to testify about probable selling price if defendants had called him as an expert witness at trial and laid a proper foundation for his testimony. The trial court also expressed misgivings about the result that it reached under subsection (f) but incorrectly thought that subsection (f) "constrained" it to exclude Mr. Collins' testimony about fair market value.

And if Mr. Collins' testimony about fair market value had been admitted under Rule 702, there is a reasonable probability that his testimony would have affected the jury's verdict. The amount of money due to defendants was the only issue for the jury to decide. Any probable effect on the dollar figure decided on by the jury would

therefore be enough to establish prejudice. While Mr. Collins' testimony may not have resulted in defendants' receiving all of the compensation that they wanted, it almost certainly would have changed the jury's analysis, and therefore would have changed the final dollar figure announced in the verdict. Standing alone, the approximately $3.17 million value estimate that defendants' sole expert introduced may have seemed like an outlier to the jury. But an additional, even higher estimate could have changed that perception.

Mr. Collins' $3.734 million calculation of just compensation, moreover, was significantly higher than any of the three figures to which the other experts actually testified at trial, and was over half a million dollars higher than even the figure to which defendants' other expert testified. The jury did not adopt any expert's figure exactly in its verdict, but it did reach a figure that was closer to those of DOT's two experts than to that of defendants' one expert. In light of these facts, it would have been improbable for the introduction of Mr. Collins' fair-market-value testimony *not* to have affected the jury's conclusions.

DOT is correct that the trial court would have allowed Mr. Collins to testify about the probable selling price of the property. That is not an adequate substitute for testimony about the property's fair market value, however. N.C.G.S. § 136-112(1) explicitly states that, when only part of a tract of land is taken, damages are determined by calculating the difference between the *fair market value* of the entire tract of land before the taking and the *fair market value* of the remaining tract of land

after the taking. If Mr. Collins had testified only about probable selling price, DOT could have easily attacked his testimony as not relevant to this determination, or at a minimum as less relevant than the testimony of the other experts.

Fair market value, after all, is defined as "the price to which a *willing* buyer and a *willing* seller would agree." *Dep't of Transp. v. Adams Outdoor Advert. of Charlotte Ltd. P'ship*, ___ N.C. ___, ___, 804 S.E.2d 486, 493 (2017) (emphases added). An analysis of probable selling price could take into account things that would not factor into an analysis of fair market value, though, such as individual motivations or hardships that might force either a buyer or a seller to accept a worse deal than he or she would if approaching the transaction willingly. In other words, fair market value and probable selling price are conceptually distinct, and an estimate of one cannot appropriately substitute for an estimate of the other. Indeed, DOT's main argument for excluding Mr. Collins' testimony is based entirely on the fact that subsection 93A-83(f) allows licensed brokers to estimate one but not the other in their BPOs and their CMAs.

We conclude that N.C.G.S. § 93A-83(f) did not prohibit Mr. Collins from preparing his expert report on fair market value in this case, and that the trial court's erroneous exclusion of Mr. Collins' testimony about fair market value on that basis prejudiced defendants. We therefore reverse the Court of Appeals on that issue and remand this case to the Court of Appeals with instructions to remand the case to the superior court for a new trial. We take no position on whether Mr. Collins was

qualified under Rule 702 of the North Carolina Rules of Evidence to give the expert testimony that he intended to give. Assuming that defendants tender Mr. Collins as an expert again, the superior court should decide in the first instance whether his testimony about fair market value is admissible under Rule 702.

Because we hold that a new trial is warranted based on the improper statutory exclusion of Mr. Collins' testimony, we do not need to reach defendants' argument concerning the allegedly improper special jury instruction given at trial. There is a good chance that the same issue will arise on retrial, however, so it is worthwhile to address the issue here. As we have said, the trial court instructed the jury that "[f]air market value should not include the diminution in value of the remainder property caused by the acquisition and use of the adjoining lands of others for the same undertaking." This instruction was taken almost verbatim from this Court's opinion in *Carolina Power & Light Co. v. Creasman*, 262 N.C. 390, 137 S.E.2d 497 (1964). The pertinent language in that opinion was, in turn, quoting from an opinion of the Supreme Court of the United States. *See Campbell v. United States*, 266 U.S. 368, 372, 45 S. Ct. 115, 117 (1924). We see no reason to disturb *Creasman* and therefore affirm the decision of the Court of Appeals on this issue.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.