MURPHY, Judge.
 

 *447
 

 *747
 
 The disagreement between these local governments can be traced to a conflict between a law of general application and a local bill: North Carolina's extraterritorial jurisdiction statute (codified at N.C.G.S. § 160A-360 ) and a local act pertaining to the exercise of territorial jurisdiction by the Town of Pinebluff (Senate Bill 433 enacted in 1999 as Session Law 1999-35). Between 2014-2015, Pinebluff sought to expand its extraterritorial jurisdiction and, pursuant to the aforementioned local act, informed Moore County of its intent to do so. Moore County refused to adopt a resolution authorizing Pinebluff's extraterritorial jurisdiction
 
 *748
 
 expansion and cited the above General Statute in support of its position. Pinebluff then sued Moore County and sought a writ of mandamus to compel the County Commissioners to approve the town's proposed extraterritorial jurisdiction expansion. The trial court ruled in favor of Pinebluff and entered an order directing the Moore County Commissioners to approve Pinebluff's extraterritorial jurisdiction expansion.
 

 We conclude that the local act, codified in N.C. Session Law 1999-35, abrogated the requirement of county approval and requires Moore County to summarily approve any otherwise lawful extraterritorial jurisdiction expansion request by Pinebluff. As a result, we affirm the trial court's order granting summary judgment and writ of mandamus.
 

 BACKGROUND
 

 Pinebluff is a municipal corporation located in Moore County. The underlying facts are not in dispute, but the parties dispute the construction of N.C.G.S. § 160A-360 as a result of N.C. Session Law. 1999-35 as it pertains to Pinebluff's extraterritorial zoning jurisdiction.
 

 Pinebluff adopted an ordinance extending its corporate limits that became effective on 19 July 2007. On 16 October 2014, Pinebluff adopted a resolution to extend its ETJ into a portion of Moore County as authorized by N.C.G.S. § 160A-360(a). On 28 October 2014, Pinebluff sent a copy of the 16 October 2014 resolution to the Chairman of the Moore County Commissioners, requesting that the County adopt an appropriate resolution allowing Pinebluff to exercise extraterritorial jurisdiction within two miles of the limits of the 19 July 2007 annexation. In its request, Pinebluff indicated that N.C. Session Law 1999-35, a local bill modifying N.C.G.S. § 160A-360 with respect to Pinebluff, required the County to adopt such a resolution.
 

 Defendants did not reply to Pinebluff's first request. Pinebluff sent a second request on 18 February 2015. In response, the Chairman of the County Commissioners met with Pinebluff's Mayor, along with the parties' respective staff and counsel. Defendants indicated their belief that S.L. 1999-35 did not obligate them to approve the request because the session law is subject to restriction by N.C.G.S. § 160A-360(e), which was not amended and must be read in harmony with the entire statute.
 

 N.C.G.S. § 160A-360, as modified by S.L. 1999-35, provides:
 

 (a) All of the powers granted by this Article may be exercised by any city within its corporate limits. In addition, any city may exercise these powers within a defined area extending not more than one mile beyond its limits. With
 
 *749
 
 the approval of the board or boards of county commissioners with jurisdiction over the area, a city of 10,000 or more population but less than 25,000 may exercise these powers over an area extending not more than two miles beyond its limits and a city of 25,000 or more population may exercise these powers over an area extending not more than three miles beyond its limits. The boundaries of the city's extraterritorial jurisdiction shall be the same for all powers conferred in this Article. No city may exercise extraterritorially any power conferred by this Article that it is not exercising within its corporate limits. In determining the population of a city for the purposes of this Article, the city council and the board of county commissioners may use the most recent annual estimate of population as certified by the Secretary of the North
 
 *448
 
 Carolina Department of Administration.
 
 The Town of Pinebluff may exercise the powers granted by this Article for a distance not more than two miles beyond its corporate limits, without regard to the population limit of this section.
 

 (a1) Any municipality planning to exercise extraterritorial jurisdiction under this Article shall notify the owners of all parcels of land proposed for addition to the area of extraterritorial jurisdiction, as shown on the county tax records. The notice shall be sent by first-class mail to the last addresses listed for affected property owners in the county tax records. The notice shall inform the landowner of the effect of the extension of extraterritorial jurisdiction, of the landowner's right to participate in a public hearing prior to adoption of any ordinance extending the area of extraterritorial jurisdiction, as provided in G.S. 160A-364, and the right of all residents of the area to apply to the board of county commissioners to serve as a representative on the planning board and the board of adjustment, as provided in G.S. 160A-362. The notice shall be mailed at least four weeks prior to the public hearing. The person or persons mailing the notices shall certify to the city council that the notices were sent by first-class mail, and the certificate shall be deemed conclusive in the absence of fraud.
 

 (b) Any council wishing to exercise extraterritorial jurisdiction under this Article shall adopt, and may amend
 
 *750
 
 from time to time, an ordinance specifying the areas to be included based upon existing or projected urban development and areas of critical concern to the city, as evidenced by officially adopted plans for its development. Boundaries shall be defined, to the extent feasible, in terms of geographical features identifiable on the ground. A council may, in its discretion, exclude from its extraterritorial jurisdiction areas lying in another county, areas separated from the city by barriers to urban growth, or areas whose projected development will have minimal impact on the city. The boundaries specified in the ordinance shall at all times be drawn on a map, set forth in a written description, or shown by a combination of these techniques. This delineation shall be maintained in the manner provided in G.S. 160A-22 for the delineation of the corporate limits, and shall be recorded in the office of the register of deeds of each county in which any portion of the area lies.
 

 (c) Where the extraterritorial jurisdiction of two or more cities overlaps, the jurisdictional boundary between them shall be a line connecting the midway points of the overlapping area unless the city councils agree to another boundary line within the overlapping area based upon existing or projected patterns of development.
 

 (d) If a city fails to adopt an ordinance specifying the boundaries of its extraterritorial jurisdiction, the county of which it is a part shall be authorized to exercise the powers granted by this Article in any area beyond the city's corporate limits. The county may also, on request of the city council, exercise any or all these powers in any or all areas lying within the city's corporate limits or within the city's specified area of extraterritorial jurisdiction.
 

 (e) No city may hereafter extend its extraterritorial powers under this Article into any area for which the county at that time has adopted and is enforcing a zoning ordinance and subdivision regulations and within which it is enforcing the State Building Code. However, the city may do so where the county is not exercising all three of these powers, or when the city and the county have agreed upon the area within which each will exercise the powers conferred by this Article.
 

 *751
 
 (f) When a city annexes, or a new city is incorporated in, or a city extends its jurisdiction to include, an area that is currently being regulated by the county, the county regulations and powers of enforcement shall remain in effect until (i) the city has adopted such regulations, or (ii) a period of 60 days has elapsed following the annexation, extension or incorporation, whichever is sooner. During this period the city may hold hearings and take any other measures that may be required in order to adopt its regulations for the area.
 
 When the Town of Pinebluff annexes any area
 

 *449
 

 outside its corporate limits thus extending the area over which it would be allowed under subsection (a) of this section to exercise the powers granted by this Article, upon presenting proper evidence to the County Board of Commissioners that the annexation has been accomplished, the County Board of Commissioners shall adopt a resolution authorizing the Town to exercise these powers within the extended area thus described.
 

 (f1) When a city relinquishes jurisdiction over an area that it is regulating under this Article to a county, the city regulations and powers of enforcement shall remain in effect until (i) the county has adopted this regulation or (ii) a period of 60 days has elapsed following the action by which the city relinquished jurisdiction, whichever is sooner. During this period the county may hold hearings and take other measures that may be required in order to adopt its regulations for the area.
 

 (g) When a local government is granted powers by this section subject to the request, approval, or agreement of another local government, the request, approval, or agreement shall be evidenced by a formally adopted resolution of that government's legislative body. Any such request, approval, or agreement can be rescinded upon two years' written notice to the other legislative bodies concerned by repealing the resolution. The resolution may be modified at any time by mutual agreement of the legislative bodies concerned.
 

 (h) Nothing in this section shall repeal, modify, or amend any local act which defines the boundaries of a city's
 
 *752
 
 extraterritorial jurisdiction by metes and bounds or courses and distances.
 

 (i) Whenever a city or county, pursuant to this section, acquires jurisdiction over a territory that theretofore has been subject to the jurisdiction of another local government, any person who has acquired vested rights under a permit, certificate, or other evidence of compliance issued by the local government surrendering jurisdiction may exercise those rights as if no change of jurisdiction had occurred. The city or county acquiring jurisdiction may take any action regarding such a permit, certificate, or other evidence of compliance that could have been taken by the local government surrendering jurisdiction pursuant to its ordinances and regulations. Except as provided in this subsection, any building, structure, or other land use in a territory over which a city or county has acquired jurisdiction is subject to the ordinances and regulations of the city or county.
 

 (j) Repealed by Session Laws 1973, c. 669, s. 1.
 

 (k) As used in this subsection, "bona fide farm purposes" is as described in G.S. 153A-340. As used in this subsection, "property" means a single tract of property or an identifiable portion of a single tract. Property that is located in the geographic area of a municipality's extraterritorial jurisdiction and that is used for bona fide farm purposes is exempt from exercise of the municipality's extraterritorial jurisdiction under this Article. Property that is located in the geographic area of a municipality's extraterritorial jurisdiction and that ceases to be used for bona fide farm purposes shall become subject to exercise of the municipality's extraterritorial jurisdiction under this Article. For purposes of complying with 44 C.F.R. Part 60, Subpart A, property that is exempt from the exercise of extraterritorial jurisdiction pursuant to this subsection shall be subject to the county's floodplain ordinance or all floodplain regulation provisions of the county's unified development ordinance.
 

 (l) A municipality may provide in its zoning ordinance that an accessory building of a "bona fide farm" as defined by G.S. 153A-340(b) has the same exemption from the building
 
 *753
 
 code as it would have under county zoning as provided by Part 3 of Article 18 of Chapter 153A of the General Statutes.
 

 This subsection applies only to the City of Raleigh and the Towns of Apex, Cary, Fuquay-Varina, Garner, Holly Springs, Knightdale, Morrisville, Rolesville, Wake Forest, Wendell, and Zebulon.
 

 N.C.G.S. § 160A-360 (emphasis added); S.L. 1999-35.
 

 *450
 
 Defendants maintain that, under N.C.G.S. § 160A-360, they were not required to approve Pinebluff's request because Moore County adopted and is enforcing a zoning ordinance and subdivision regulations and is enforcing the State Building Code within Pinebluff's proposed extraterritorial expansion area. Based on the premise that S.L. 1999-35 does not invalidate N.C.G.S. § 160A-360(e) as applied to Pinebluff, Defendants informed Pinebluff that it would have to obtain Defendants' approval to extend its extraterritorial jurisdiction, which requires Pinebluff go through Defendants' public hearing process as defined in Moore County's Unified Development Ordinance.
 

 In accordance with Moore County's Unified Development Ordinance, Moore County's Planning Board held a public hearing and recommended that Defendants deny the extension request. The Planning Board noted that no one at the meeting spoke in favor of the request. The Board of Commissioners later held a public hearing before voting on the request and observed that no one spoke in favor of the request and that nine people spoke against it. The Board of Commissioners voted 5-0 to deny Pinebluff's request.
 

 On 21 January 2016, Pinebluff filed a
 
 Complaint and Petition for Writ of Mandamus
 
 against Defendants, arguing that S.L. 1999-35 required Defendants to approve their extension request. Defendants filed an
 
 Answer, Motion to Dismiss and Motion for Judgment on the Pleadings Pursuant to N.C. Rules of Civil Procedure 12(b)(6) and 12(c)
 
 . Later, Pinebluff filed a motion for summary judgment with a contemporaneously filed affidavit. After a hearing, the trial court entered an order allowing Pinebluff's motion for summary judgment and petition for writ of mandamus and denying Defendants' motion to dismiss and motion for judgment on the pleadings. The order directed Defendants "to adopt a resolution authorizing [Pinebluff] to exercise its extraterritorial zoning jurisdiction within the area [Pinebluff] requested in its resolution adopted October 16, 2014." Defendants timely appealed.
 

 *754
 

 ANALYSIS
 

 Defendants argue that the trial court erred in granting Pinebluff's motion for summary judgment and issuing a writ of mandamus.
 
 [1]
 
 After careful examination of the statute as amended and consideration of the canons of construction applicable here, we affirm the trial court's disposition of this matter.
 

 Defendants interpret N.C.G.S. § 160A-360(a) and S.L. 1999-35 to require that Pinebluff obtain Defendants' approval to extend its extraterritorial jurisdiction beyond one mile. Defendants also contend that N.C.G.S. § 160A-360(e), notwithstanding N.C.G.S. § 160A-360(f) as amended by S.L. 1999-35, prohibits Pinebluff from extending its extraterritorial jurisdiction into an area where Moore County is exercising all three powers set out in N.C.G.S. § 160A-360(e).
 

 As Pinebluff and Defendants dispute the construction of S.L. 1999-35, we must determine whether, by adopting S.L. 1999-35, the General Assembly intended to require Moore County to rubber stamp any resolutions authorizing Pinebluff to exercise its extraterritorial zoning jurisdiction upon Pinebluff's presentation of proper evidence of annexation, even if Moore County is exercising all three powers listed in N.C.G.S. § 160A-360(e). After examining the statute and enactment of S.L. 1999-35, we agree with Pinebluff and hold that the General Assembly intended to remove all discretion from Moore County to oppose an extension of Pinebluff's extraterritorial jurisdiction.
 

 *451
 
 We review an order granting summary judgment de novo.
 
 Forbis v. Neal
 
 ,
 
 361 N.C. 519
 
 , 524,
 
 649 S.E.2d 382
 
 , 385 (2007). Summary judgment is only appropriate when the record demonstrates that "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."
 

 Id.
 

 (quoting N.C.G.S. § 1A-1, N.C. R. Civ. P. 56(c) ).
 

 *755
 
 In ensuring that the legislative intent is accomplished, "we are guided by the structure of the statute and certain canons of statutory construction."
 
 Elec. Supply Co. of Durham v. Swain Elec. Co.
 
 ,
 
 328 N.C. 651
 
 , 656,
 
 403 S.E.2d 291
 
 , 294 (1991). Our Supreme Court has previously observed that "[s]tatutory interpretation properly begins with an examination of the plain words of the statute."
 
 Lanvale Props., LLC v. Cty. of Cabarrus
 
 ,
 
 366 N.C. 142
 
 , 154,
 
 731 S.E.2d 800
 
 , 809-10 (2012) (quoting
 
 Three Guys Real Estate v. Harnett Cty.
 
 ,
 
 345 N.C. 468
 
 , 472,
 
 480 S.E.2d 681
 
 , 683 (1997) ). "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."
 
 N.C. DOT v. Mission Battleground Park, DST
 
 ,
 
 370 N.C. 477
 
 ,
 
 810 S.E.2d 217
 
 , 222 (2018) (quoting Antonin Scalia & Bryan A. Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 167 (2012) ).
 

 We "presume[ ] that the Legislature acted with full knowledge of prior and existing law."
 
 See
 

 Ridge Cmty. Inv'rs, Inc. v. Berry
 
 ,
 
 293 N.C. 688
 
 , 695,
 
 239 S.E.2d 566
 
 , 570 (1977). Moreover, "[a]mendments are presumed not to be without purpose."
 
 Pine Knoll Shores v. Evans
 
 ,
 
 331 N.C. 361
 
 , 366,
 
 416 S.E.2d 4
 
 , 7 (1992). When only part of a statute is amended, we view the unmodified provisions "simply as a reenactment, except as to the new provision, which is to take effect from the time of the amendment."
 
 State v. Mull
 
 ,
 
 178 N.C. 748
 
 , 752,
 
 101 S.E. 89
 
 , 91 (1919).
 

 Although the
 
 in pari materia
 
 canon of statutory interpretation clearly applies to the interpretation of conflicting provisions within different statutes that address the same subject matter,
 
 State ex rel. Comm'r of Ins. v. N.C. Fire Insurance Rating Bureau
 
 ,
 
 292 N.C. 70
 
 , 76,
 
 231 S.E.2d 882
 
 , 886 (1977), its principles along with the whole-text canon guide us when there is a conflict between two provisions of the same statute. If reading a statutory scheme as a whole produces an "irreconcilable conflict," by which two conflicting provisions cannot be given independent meaning, the more recent provision should control.
 
 See
 

 Greensboro v. Guilford Cty.
 
 ,
 
 191 N.C. 584
 
 , 588,
 
 132 S.E. 558
 
 , 559 (1926) ("It is well settled that a special or local law repeals an earlier general law to the extent of any irreconcilable conflict between their provisions, or speaking more accurately, it operates to engraft on the general statute an exception to the extent of the conflict.") (quoting 25
 
 Ruling Case Law
 
 929 (William M. McKinney & Burdett A. Rich eds., 1919) ).
 

 Here, the text of S.L. 1999-35 makes clear that the General Assembly intended to replace § 160A-360(a) and § 160A-360(f) with the modified provisions in S.L. 1999-35, while leaving the rest of N.C.G.S. § 160A-360
 
 *756
 
 intact. Once we read the statute as a whole and combine S.L. 1999-35 with the unmodified portion of N.C.G.S. § 160A-360, two of the provisions conflict with each other: N.C.G.S. § 160A-360(e) prohibits a city's exercise of extraterritorial jurisdiction within an area where the county is exercising the three powers enumerated therein, whereas N.C.G.S. § 160A-360(f) as amended by S.L. 1999-35 provides that Moore County "shall adopt a resolution authorizing [Pinebluff] to exercise these powers within the extended area thus described." S.L. 1999-35 is silent about the applicability or inapplicability of N.C.G.S. § 160A-360(e) to the specific authorization for Pinebluff in N.C.G.S. § 160A-360(f). Defendants' favored interpretation focuses on the commands of N.C.G.S. § 160A-360(e), whereas Pinebluff argues that N.C.G.S. § 160A-360(f) invalidates the effect that N.C.G.S. § 160A-360(e) otherwise would have on Pinebluff's proposed exercise of extraterritorial jurisdiction.
 

 For the following reasons, we conclude that there is an "irreconcilable conflict" between N.C.G.S. § 160A-360(e) and
 
 *452
 
 N.C.G.S. § 160A-360(f) as applied to Pinebluff.
 
 See
 

 State v. Hutson
 
 ,
 
 10 N.C. App. 653
 
 , 657,
 
 179 S.E.2d 858
 
 , 861 (1971) ("Statutes
 
 in pari materia
 
 , although in apparent conflict or containing apparent inconsistencies, should, as far as reasonably possible, be construed in harmony with each other so as to give force and effect to each...."). However, here, it is not possible to construe these provisions in harmony with one another.
 

 N.C.G.S. § 160A-360(a), as modified by S.L. 1999-35, provides that Pinebluff need not meet the population requirement to exercise extraterritorial jurisdiction for up to two miles beyond its corporate limits.
 
 [2]
 
 A town of Pinebluff's size could otherwise exercise extraterritorial jurisdiction only within one mile beyond its corporate limits. N.C.G.S. § 160A-360(a) ("[A]ny city may exercise these powers within a defined area extending not more than one mile beyond its limits. With the approval of the board or boards of county commissioners with jurisdiction over the area, a city of 10,000 or more population but less than 25,000 may exercise these powers over an area extending not more than two miles beyond its limits...."). Defendants contend that Pinebluff must still obtain its approval to exercise extraterritorial jurisdiction in the areas more than one mile beyond Pinebluff's corporate limit.
 

 Defendants' interpretation is inconsistent with the plain language of S.L. 1999-35. S.L. 1999-35 provides that "[t]he Town of Pinebluff may
 
 *757
 
 exercise the powers granted by this Article for a distance not more than two miles beyond its corporate limits, without regard to the population limit of this section." N.C.G.S. § 160A-360(a) contains a provision by which cities of more than 10,000 people but fewer than 25,000 may extend their exterritorial jurisdiction for up to two miles with approval from the county commissioners. However, the approval process in this provision is not required here because S.L. 1999-35 exempts Pinebluff from the population requirement that is otherwise a prerequisite in the process of extending the boundaries of a city's extraterritorial jurisdiction without county approval.
 

 On its own, N.C.G.S. § 160A-360(a) as amended by S.L. 1999-35 does not imply that Pinebluff enjoys unrestricted exercise of its extraterritorial jurisdiction within two miles of its corporate limits. Because the General Assembly did not modify N.C.G.S. § 160A-360(e) in S.L. 1999-35, N.C.G.S. § 160A-360(e) limits the application of N.C.G.S. § 160A-360(a). Our Supreme Court has recognized that N.C.G.S. § 160A-360(e) prohibits a city's exercise of extraterritorial jurisdiction in an area where the county is exercising the three enumerated functions-even if a city seeks extraterritorial jurisdiction
 
 within
 
 the one-mile limit provided by N.C.G.S. § 160A-360(a).
 
 See
 

 Town of Boone v. State
 
 ,
 
 369 N.C. 126
 
 , 128 n.1,
 
 794 S.E.2d 710
 
 , 712 n.1 (2016) ("Even when a municipality wishes to exercise extraterritorial jurisdiction in an area within one mile of its corporate limits, county approval is required if the county is already enforcing zoning ordinances, subdivision regulations, and the State Building Code in that area."). In other words, even though a city does not otherwise need the county's approval to exercise its extraterritorial jurisdiction within one mile
 
 [3]
 
 of its corporate limits under N.C.G.S. § 160A-360(a), N.C.G.S. § 160A-360(e) acts as a limit on this authority under certain circumstances.
 

 If S.L. 1999-35 contained only the above modification to N.C.G.S. § 160A-360(a), the existence of N.C.G.S. § 160A-360(e) in the general statutory scheme would clearly demonstrate that Defendants retain the discretion to follow their own discretion and/or consider the will of their constituents as expressed at a hearing under N.C.G.S. § 160A-360(a1) and disapprove of Pinebluff's request
 
 *453
 
 to exercise extraterritorial jurisdiction
 
 *758
 
 within the two-mile boundary provided by N.C.G.S. § 160A-360(a). If S.L. 1999-35 amended only N.C.G.S. § 160A-360(a), the potential additional mile of extraterritorial jurisdiction would not affect our application of our Supreme Court's observation in
 
 Town of Boone
 
 , where the Court recognized that N.C.G.S. § 160A-360(a) is subject to N.C.G.S. § 160A-360(e).
 
 See
 

 Town of Boone
 
 ,
 
 369 N.C. at
 
 128 n.1,
 
 794 S.E.2d at
 
 712 n.1.
 

 However, the General Assembly also amended the language of N.C.G.S. § 160A-360(f) with S.L. 1999-35. Because "amendments are presumed not to be without purpose," we must determine how the amendment to N.C.G.S. § 160A-360(f) alters the town's or county's authority.
 
 See
 

 Pine Knoll Shores
 
 ,
 
 331 N.C. at 366
 
 ,
 
 416 S.E.2d at 7
 
 . Under Defendants' reading of N.C.G.S. § 160A-360(f), the modification to N.C.G.S. § 160A-360(f) serves to reinforce the General Assembly's above amendment to N.C.G.S. § 160A-360(a), which is unambiguous on its own. We are not persuaded by Defendants' reading of N.C.G.S. § 160A-360(f).
 

 Because N.C.G.S. § 160A-360(a) clearly authorizes Pinebluff to exercise its extraterritorial jurisdiction within two miles of its corporate limit without county approval, subject to N.C.G.S. § 160A-360(e), the amendment to N.C.G.S. § 160A-360(f) must affect the scope of Defendants' discretion in some other way. The plain language of N.C.G.S. § 160A-360(f), as modified by S.L. 1999-35, is clear: Defendants do not retain the discretion to disapprove of Pinebluff's requests to exercise its extraterritorial jurisdiction within the two-mile limit authorized by the above alteration to N.C.G.S. § 160A-360(a). N.C.G.S. § 160A-360(f), as modified by S.L. 1999-35, provides that Pinebluff can exercise extraterritorial jurisdiction within two miles of its corporate limits, as allowed by N.C.G.S. § 160A-360(a), even if Moore County is exercising the three powers described in N.C.G.S. § 160A-360(e).
 

 If N.C.G.S. § 160A-360(f) as amended did not operate to invalidate the discretion otherwise retained by Defendants under N.C.G.S. § 160A-360(e), N.C.G.S. § 160A-360(f) as amended would have no effect at all. As discussed above, N.C.G.S. § 160A-360(a) as amended by S.L. 1999-35 states that Pinebluff can exercise extraterritorial jurisdiction within two miles of its corporate limits, and our Supreme Court has interpreted N.C.G.S. § 160A-360(e) as a general exception to this authority.
 
 See
 

 Town of Boone
 
 ,
 
 369 N.C. at
 
 128 n.1,
 
 794 S.E.2d at
 
 712 n.1. It follows that, where N.C.G.S. § 160A-360(e)
 
 does not
 
 apply, a city can exercise its extraterritorial jurisdiction within the limits set out by N.C.G.S. § 160A-360(a), and a county has no discretion to limit a city's otherwise lawful exercise of extraterritorial jurisdiction.
 

 *759
 
 As a result, even without N.C.G.S. § 160A-360(f) as amended by S.L. 1999-35, N.C.G.S. § 160A-360(a) authorizes Pinebluff to exercise its extraterritorial jurisdiction within two miles of its corporate limits where N.C.G.S. § 160A-360(e) does not apply. Defendants have no discretion to limit Pinebluff's exercise of extraterritorial jurisdiction where Moore County is not exercising the three powers described in N.C.G.S. § 160A-360(e). Because the General Assembly amended N.C.G.S. § 160A-360(f) in addition to N.C.G.S. § 160A-360(a), each must have independent meaning. N.C.G.S. § 160A-360(f) clearly removes some of Defendants' discretion to deny Pinebluff's requests to extend its extraterritorial jurisdiction, and N.C.G.S. § 160A-360(e) is the only source of such discretion.
 

 Because N.C.G.S. § 160A-360(e) and N.C.G.S. § 160A-360(f) as amended by S.L. 1999-35 are inconsistent with one another, we must determine which provision controls here. "Where two statutes are thus in conflict and cannot reasonably be reconciled, the latter one repeals the one of earlier date to the extent of the repugnance."
 
 Guilford Cty.
 
 ,
 
 191 N.C. at 588
 
 ,
 
 132 S.E. at 559
 
 . (quoting
 
 State v. Kelly
 
 ,
 
 186 N.C. 365
 
 , 371-72,
 
 119 S.E. 755
 
 , 759 (1923) ). Although our Supreme Court in
 
 Guilford County
 
 managed to reconcile the conflicting provisions in that case, we have shown above that no such interpretation is tenable here. Therefore, we conclude that "the last enactment must prevail...."
 
 See
 

 Guilford Cty. v. Estates Admin., Inc.
 
 ,
 
 212 N.C. 653
 
 , 655,
 
 194 S.E. 295
 
 , 296 (1937). The General Assembly enacted
 
 *454
 
 N.C.G.S. § 160A-360(e) in 1971. S.L. 1971-698. The General Assembly enacted S.L. 1999-35 in 1999. Accordingly, we hold that S.L. 1999-35's amendment of N.C.G.S. § 160A-360(f) operates to invalidate the applicability of N.C.G.S. § 160A-360(e) with regard to Pinebluff.
 

 CONCLUSION
 

 We conclude that S.L. 1999-35, being the most recent enactment, operates to invalidate the applicability of N.C.G.S. § 160A-360(e) with regard to Pinebluff. Therefore, Moore County did not have discretion to withhold passing a resolution regarding Pinebluff's extraterritorial jurisdiction. Accordingly, we affirm the trial court's entry of summary judgment in favor of Pinebluff and the writ of mandamus requiring Moore County to adopt a resolution authorizing Pinebluff to exercise its extraterritorial jurisdiction within the area identified by the 16 October 2014 Pinebluff resolution.
 

 AFFIRMED.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 Defendants have attempted to appeal the denial of the motion to dismiss and motion for judgment on the pleadings. However, we note that neither of these issues are appealable.
 
 See
 

 Whitaker v. Clark
 
 ,
 
 109 N.C. App. 379
 
 ,
 
 427 S.E.2d 142
 
 (1993) (finding that generally, appeal from denial of a motion for judgment on the pleadings "does not lie" with the Court of Appeals absent an interlocutory appeal that affects a substantial right);
 
 Drain v. United Servs. Life Ins. Co.
 
 ,
 
 85 N.C. App. 174
 
 , 176,
 
 354 S.E.2d 269
 
 , 271 (1987) ("[W]here an unsuccessful motion to dismiss is grounded on an alleged insufficiency of the facts to state a claim for relief, and the case thereupon proceeds to judgment on the merits, the unsuccessful movant may not on an appeal from the final judgment seek review of the denial of the motion to dismiss."). Accordingly, the only issue on appeal is whether summary judgment was properly granted for Pinebluff.
 

 [2]
 

 "
 
 The Town of Pinebluff may exercise the powers granted by this Article for a distance not more than two miles beyond its corporate limits, without regard to the population limit of this section
 
 ." S.L.1999-35 (emphasis in original).
 

 [3]
 

 N.C.G.S. § 160A-360(a) provides that "any city may exercise these powers within a defined area extending not more than one mile beyond its limits." In other cases, a city's exercise of extraterritorial jurisdiction does not require county approval unless N.C.G.S. § 160A-360(e) applies. Here, because of S.L. 1999-35, Pinebluff has authority to exercise its extraterritorial jurisdiction for up to two miles beyond its corporate limits without Moore County's approval.